DAVID SHINSKY *vs.* MICHAEL J. TRACEY & others.

Essex.   October 19, 1916. — January 24, 1917.

Present: RUGG, C. J., LORING, BRALEY, PIERCE, & CARROLL, JJ.

*Unlawful Interference. Labor. Labor Union. Equity Jurisdiction,* To enjoin unlawful interference.

A labor union, which controlled ninety per cent of the laborers employed in the shoe industry in a certain city, made with several of the manufacturers a contract under seal which contained a provision that, "so long as these local unions are in a position to furnish help to do the work no other help may be employed." A member of the union, who had worked for one employer in the city for eight years, whose employer had not made the employment subject to the condition that he should continue a member of the union, and whose work for his employer was satisfactory, was expelled from the union after a hearing duly conducted for an infraction of the union's rules in that he had become a member of a rival organization and a business competitor of the union; and thereafter the union "to punish him and hold him up as an example before their membership" procured his discharge by his employer, who but for the action of the union would have continued him in employment, and by another firm who afterwards employed him, and, by reason of the action of the union, it became impossible for him to obtain work with any one of ninety per cent of the factories in the city because they were controlled by the union in the city, and highly improbable that he could obtain work with any one of the other ten per cent. *Held,* that the discharged laborer manifestly was a sufferer from the consequences of an illegal boycott and might maintain a suit in equity to enjoin the officers and members of the union from further interference with his right to labor, and for damages.

The right to acquire property by labor is coequal with the right to acquire property by contract.

It is an actionable wrong for a labor union malevolently to take away or to impair a laborer's right to his handiwork as a means of subsistence.

BILL IN EQUITY, filed in the Superior Court on October 27, 1915, and afterwards amended, praying for an injunction restraining the defendants, officers and members of the United Shoe Workers of America, a voluntary unincorporated association, "from interfering or from combining, conspiring or attempting to interfere with the plaintiff in obtaining and holding employment and from intimidating or threatening persons who might employ or desire to employ the plaintiff and from in any way hindering the plaintiff in obtaining or continuing in employment;", and for damages.

The suit was referred to a master. The material facts found and reported by the master in a first and a supplemental report are stated in the opinion. Upon a hearing by *McLaughlin,* J., the reports of the master were confirmed by an interlocutory decree and a final decree was entered dismissing the bill. The plaintiff appealed.

*H. D. Linscott,* for the plaintiff.

*F. W. Mansfield,* for the defendants, submitted a brief.

BRALEY, J. By becoming a member of the voluntary association known as "The United Shoe Workers of America" the plaintiff engaged to be bound by its rules and subjected himself to its discipline. *Correia* v. *Portuguese Fraternity of the United States of America,* 218 Mass. 305. *Carter* v. *Papineau,* 222 Mass. 464. And the trial for alleged infraction of his obligations having been conducted, as the master finds, in accordance with the constitution, his expulsion is not reviewable and the original bill cannot be maintained under the first prayer, that the defendants be enjoined "from excluding the plaintiff from access to their meetings and from membership." *Spilman* v. *Supreme Council of the Home Circle,* 157 Mass. 128. But upon severance, his interest in the funds and property of the association ended, nor was he bound by the purposes or amenable to the penal code of the body with which he had been affiliated, and in so far as the defendants were concerned his right to dispose of his own labor according to his own will had not been abrogated or restricted. *McFadden* v. *Murphy,* 149 Mass. 341. *Plant* v. *Woods,* 176 Mass. 492. *Berry* v. *Donovan,* 188 Mass. 353.

The first paragraph of the amended bill alleges and the answer admits, that when expelled he had been employed at lasting shoes in a local factory for nearly eight years; and the master reports that, his work being satisfactory, he would have been retained except for the concerted action and conduct of the defendants. Their dominant purpose and controlling motive in procuring his discharge shortly after expulsion, as well as his discharge when he subsequently obtained employment with another shoe company which knew that he was no longer a member of the United Shoe Workers is found to have been, "to punish him and hold him up as an example before their membership," and the letters which they caused to be sent were "to induce the plaintiff's employer in each instance to discharge" him. The justification pleaded in the sixth paragraph of the answer is, that the plaintiff "had been a party to an agreement a copy of which is hereto annexed, and that the employers mentioned by him in his bill of complaint were also parties to said agreement; that the plaintiff violated his agreement and that if any action was taken by his employers or any other person which resulted in injury to him, . . . said action was the direct result of his own unlawful acts, in violating and repudiating the agreement."

It is unnecessary to pass on the validity of the agreement, which is an instrument under seal, or to decide whether the manufacturers or the members of the association could have compelled specific performance, for in the light of the findings quoted this defence vanishes.

It is true that the fifth, and in this connection the important article of this agreement or "Peace Pact" entered into by the association when the plaintiff was a member and certain shoe manufacturers including his employers provides, that ". . . so long as these local unions are in a position to furnish help to do the work no other help may be employed." The defendants nevertheless were not seeking its protection for the economic purpose of furnishing work for their own members, where if this were not done there would not be enough work to keep them employed, which was the motive underlying the strike decided to be lawful in *Minasian* v. *Osborne*, 210 Mass. 250. Nor were they actuated by a desire to conserve and promote the welfare of the plaintiff and his employers through the offer of friendly advice. *Tasker*

v. *Stanley,* 153 Mass. 148, 150. But to preserve and to compel discipline in their own ranks they intended to proscribe the plaintiff who had become a member of a rival organization and business competitor of the association. It may be added, that at the date of the agreement the plaintiff had been employed for many years under a contract at will which does not appear to have been dependent upon a condition that he should be and remain a member of any organization. The plaintiff's expulsion did not automatically terminate this employment, and his continuance at his work until retired solely through their efforts did not as between themselves constitute a breach of the peace pact or agreement for which he would be liable to the defendants in damages. *Warren* v. *Stearns,* 19 Pick. 73. *Bryne* v. *Dorey,* 221 Mass. 399, 404. *Moran* v. *Dunphy,* 177 Mass. 485.

The report, while stating that the plaintiff has lost the benefit of his contracts of employment, goes further. It is specifically found "that by reason of the control which the defendants and their organization exercise over the shoe industry in Lynn, it will be impossible for the plaintiff hereafter to obtain work in at least ninety per cent of the shoe factories of Lynn in which the labor is controlled by the United Shoe Workers of America, and further as a marked man, it is highly improbable that he could obtain and keep employment in the remaining ten per cent of the shoe factories in Lynn."

The plaintiff manifestly is a sufferer from the consequences of an intentional and a successful boycott. If he had ceased to work at his calling and had engaged in trade the attempt to deprive him of his customers and to destroy his business by the methods described would have been under the master's findings an actionable wrong. *Burnham* v. *Dowd,* 217 Mass. 351. The right to acquire property by labor is coequal with the right to acquire property by contract and, having the same right to sell his labor as he would have had to sell his merchandise to the highest bidder, it is no less an actionable wrong where the right to his handiwork as a means of subsistence has been malevolently taken away or impaired under industrial conditions which the defendants knew would so operate as to make his further employment in the community where he resides extremely precarious if not practically impossible. *Berry* v. *Donovan,* 188 Mass. 353, 355, and cases cited.

*Hoban* v. *Dempsey*, 217 Mass. 166, 170. *Cornellier* v. *Haverhill Shoe Manufacturers' Association*, 221 Mass. 554, 561. *Bogni* v. *Perotti*, 224 Mass. 152. Martin's Modern Law of Labor Unions, § 132.

While it is apparent upon the record that the plaintiff cannot be effectively aided by injunctive relief, he is entitled to damages. *Perry* v. *Pye*, 215 Mass. 403, 413. *New England Cement Gun Co.* v. *McGivern*, 218 Mass. 198, 204. The decree dismissing the bill is reversed, and a decree with costs is to be entered for the amount assessed by the master.

*Ordered accordingly.*