RUSSELL A. RICHARDS *vs.* GEORGE B. MORISON & others.

Plymouth.    November 15, 16, 1917. — February 28, 1918.

Present: RUGG, C. J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Social Club,* Expulsion of member.    *Corporation,* Social club.

In an action by one who had been a member of a social club against the members of the governing committee of the club for the alleged unlawful expulsion of the plaintiff as a member, the courts do not investigate the question whether the decision of the committee was right or wrong, and go no further than to ascertain whether the essential formalities required by the constitution and by-laws of the club have been complied with, whether the proceedings have been regular, whether the cause assigned was one sufficient in law to warrant expulsion, whether the expelled member was given a fair chance to present his side of the controversy so as to satisfy the requirements of natural justice, whether the decision was within the scope of the jurisdiction of the committee, whether it was reached in good faith and whether the action appears to have been taken within the exercise of sound reason or to have been capricious, arbitrary and irrational,

with such possible modification or amplification of these inquiries as the particular circumstances of a case may require.

Where the constitution of a social club gives the governing committee jurisdiction over the expulsion of members in a manner there prescribed for "conduct injurious to the good order, peace, or interest of the association," the making of a false charge of misappropriation of property of the club by a member of the club who is a member of the governing committee can be found by the governing committee to be a sufficient ground for expulsion.

In an action against the governing committee of a social club for the alleged unlawful expulsion of the plaintiff for the cause named above, it is not evidence of malice or of bad faith on the part of the defendants that they felt aggrieved by the conduct of the plaintiff, or that they instituted proceedings for the plaintiff's expulsion promptly without waiting for usual but unnecessary formalities, or that they consulted an attorney at law and followed his advice as to procedure, or that they refused to allow the plaintiff to be represented by counsel at the hearing before the committee, or that slanders against the plaintiff, not relating to the cause for which the plaintiff was expelled and not shown to have emanated from the defendants, were circulated about the club before the vote of expulsion.

In the case above referred to it was *said* by this court that a careful examination of the whole evidence showed that it did not justify the inference that the defendants did not keep within the limits of their jurisdiction as defined by the constitution of the club or that they did not act in good faith or that they were controlled by malice.

TORT against the members of the governing committee of an incorporated social club in Boston known as the Boston Athletic Association for the alleged unlawful expulsion of the plaintiff as a member on May 25, 1914. Writ dated June 26, 1914.

In the Superior Court the case was referred to an auditor. He filed a report stating his findings of fact and also the following conclusions:

"1. That the defendants were justified in voting to expel the plaintiff, and that the various steps taken by them resulting in his expulsion were properly taken.

"2. That there was no conspiracy on the part of the defendants, or any of them, as alleged in the first count of the plaintiff's declaration.

"3. That the defendants did not maliciously and falsely charge the plaintiff with conduct injurious to the good order, peace, and interest of the association; and did not maliciously, wrongfully, and in bad faith hear said charge, find it to be true, and thereupon expel him from the association, all as alleged in the declaration.

"4. That the defendants gave the plaintiff a fair, adequate and

proper opportunity to be heard in his own defence, which was denied in the declaration.

"5. That the defendants, individually or collectively, are not liable to the plaintiff in this action.

"And I so find."

Later the case was tried before *Fox*, J. The evidence is described in the opinion. The judge refused to order a verdict for the defendants and submitted the case to the jury, who returned a verdict for the plaintiff in the sum of $1.

The plaintiff filed a motion for a new trial, on the ground that the damages were inadequate. This motion was heard by the judge, who ruled that, while in his opinion the plaintiff was not entitled to any damages or to a verdict, he would not order a new trial because of the expense to the county.

The defendants and the plaintiff both alleged exceptions.

*T. Hunt*, for the defendants.

*J. J. Feely*, for the plaintiff.

RUGG, C. J. This is an action of tort whereby the plaintiff seeks to recover damages alleged to have been sustained by his expulsion from the Boston Athletic Association, a private club organized as a Massachusetts corporation. The defendants are twenty persons constituting the governing committee of that association. The declaration in substance charges that the defendants, being actuated by malice, conspired to deprive him of his membership in the organization and to that end charged him falsely with conduct injurious to the good of the association, tried him upon such charges and expelled him. The case was heard by an auditor, who found in favor of the defendants. It then was tried to a jury, whose verdict was for the plaintiff in nominal damages. It is now before us on the exceptions of both parties.

The plaintiff, by becoming a member of the association, agreed to be bound by its rules and subject to its discipline. As one of the incidents of membership, he consented to accept liability to expulsion, ordered in accordance with its regulations. When the action of the association or of its officers is challenged in respect to the exercise of the power of expulsion, the court does not sit in review upon the wisdom or expediency of their conduct. The decision of the organization and its officers acting in good

faith in accordance with the rules on that subject is the final tribunal. There is no general appeal to the courts. The courts do not investigate the question whether the decision was right or wrong, but go no further than to ascertain whether the essential formalities required by the constitution and by-laws of the association have been complied with, whether the proceedings have been regular, whether the cause assigned is one sufficient in law to warrant expulsion, whether the member has been given a fair chance to present his side of the controversy so as to satisfy the requirements of natural justice, whether the decision is within the scope of the jurisdiction and whether it has been reached in good faith, and whether the action appears to have been within an exercise of sound reason or to have been capricious, arbitrary and irrational. This general statement may require modification or amplification according to particular circumstances, but is sufficient for the case at bar. *Spilman* v. *Home Circle*, 157 Mass. 128. *Carter* v. *Papineau*, 222 Mass. 464. *Shinsky* v. *Tracey*, 226 Mass. 21. *Dawkins* v. *Antrobus*, 17 Ch. D. 615. *Lewis* v. *Wilson*, 121 N. Y. 284. *Green* v. *Board of Trade*, 174 Ill. 585. *Lambert* v. *Addison*, 46 L. T. (N. S.) 20. *Fisher* v. *Keane*, 11 Ch. D. 353, 360. *Wilcox* v. *Royal Arcanum*, 210 N. Y. 370, 376.

A brief narration of the circumstances is necessary. The plaintiff, with six other members of the association, was appointed on a committee "to investigate the affairs of the association and to devise some means for the purpose of helping the present governing board to reduce the running expenses of the club." He alone made a minority report, in which he sharply criticized the management of the governing board, saying among other matters that their methods and conduct rendered "possible" "the misappropriation of large sums" and "liberal amounts" without fear of detection. The reports of the majority and minority of the committee were received and placed on file at a meeting of the club held on April 14. The annual meeting was held on April 27. It does not appear that either of these reports was laid before that meeting. But however that may be, the plaintiff addressed that meeting and said "The minority report I read at the last meeting directly charged misappropriation of club property. There has been no cognizance of that taken by the governing committee. . . . I can prove any

statement I have made." The plaintiff's minority report construed as a written instrument made no charge of "misappropriation" of club property by any member of the governing committee. It criticized with severity the methods of management and of accounting sanctioned by the committee, but the only charge was that thereby the misappropriation of large sums was made possible without fear of detection. In connection with all that was said, however, that misappropriation was not directly charged against anybody in particular or, if against anybody, certainly not against the members of the governing board. But at the annual meeting the plaintiff amplified and specified his meaning. He then made the direct accusation that club property had been misappropriated and said in substance that he intended to make that definite charge in his report and supposed and assumed that he had done so. These remarks at the annual meeting were not in the line of his duty as a member of the committee of seven. Its work had been ended and his report as one of its members had been made and by the club received and filed. As a member of the club he had a right at the annual meeting to discuss its affairs. But he ran the risk of being called to account for conduct unbecoming a member if he charged the misappropriation of club property without just ground. His remarks at the annual meeting, however, did not name the persons against whom his charge was directed. For aught that appeared from this statement, still the misappropriation might have been, not by members of the club but by employees, made possible by the lax methods by which the affairs of the club were administered. The next step was that on May 1 the governing committee voted to request the plaintiff "to submit to the committee, in writing, his specific charges and evidence, on or before May 8, 1914; and that if he fails to comply with this requirement, the committee take action under Article XXIV of the constitution." That article will be considered later. A copy of this vote with the letter of transmittal was sent to the plaintiff on May 2. In response to a request from the plaintiff, the president of the club, the first named defendant, handed or caused to be handed to the plaintiff a stenographic copy of his remarks at the annual meeting. On May 8 the plaintiff addressed to the governing committee in reply to its note a communication containing "all evidence tend-

ing to substantiate certain alleged statements made by me at the annual meeting." He then quoted the stenographic report of his remarks at the annual meeting and proceeded to set forth a statement by one Gibson, a previous employee of the club, to the plaintiff and two other members of the club, to the effect that one Conway, the head bookkeeper, once had said "that it was a shame that Keates was drawing so much money out of the treasury and that if he kept it up, there wouldn't be any left. Also that Keates has taken some of his (Conway's) office furniture and had replaced it with some not as good. This remark led me as a member of the committee of seven to look into the expenditures that were under Mr. Keates' supervision, and for which he receives $1,500. I found included in the expenditures of $64,749.55, the following items," amounting to $14,587.50 from three different firms. "I then sought to learn if the club had received any credit for any of the old furnishings. I first inquired of the head bookkeeper if there were any credits on the club books, and he assured me there were not. . . . I was unable . to obtain any satisfactory explanation, and I, therefore, stated in my minority report that for this replaced equipment, there was not a penny of credit on the books. Before the annual meeting I asked Mr. Keates in the presence of a number of members of the club, if he could give me any explanation and he replied that he knew nothing about it." Without quoting further it is manifest that in this letter, in conjunction with his oral remarks at the annual meeting with the reference then made to his minority report, the plaintiff charged misappropriation of club property by Mr. Keates, who at this time was a member of the governing committee. This communication from the plaintiff was considered by the governing committee. One of the governing committee wrote respecting the plaintiff's statement to Mr. Conway, who was out of the Commonwealth, and a reply was received to the effect that Gibson had a dislike for Keates and that Gibson's statement was false, and that he, Conway, never made any such remark as was attributed to him. Chartered accountants made an investigation and reported that the only articles of the club which had been removed from the club building and which they were unable to trace were one chair, "which may have been otherwise described on its return and thus be difficult to identify," and "some old linoleum, window

shades, and electric light fixtures." The correspondence and papers were laid before a lawyer, who after examination wrote a long letter of advice to the effect that no charge of wrongdoing had been made by the plaintiff against any one except Keates, and outlining correctly the procedure which the committee should take if it chose to act under Article XXIV of the by-laws. Thereafter a vote was taken by the governing committee that the plaintiff "be charged with conduct injurious to the good order, peace and interest of the association, in that he has made without justification false accusations against Mr. George W. Keates, a fellow member . . . of misappropriation of club furniture." Notice was sent to the plaintiff and a hearing set for May 19. The plaintiff demanded that he be allowed to bring his own stenographer and several members of the club and be represented by counsel, and that all his witnesses be present during the examination. This demand was refused, but the plaintiff was told that the testimony of such persons as he might produce would be heard and considered. At the time appointed for hearing the correspondence all was read. The plaintiff asked for proof that he had made charges against Mr. Keates. The president replied that the committee was not there to make out a case against the plaintiff, but to hear him, and that they had become cognizant of his conduct. Mr. Anthony, one of the committee, made a statement and read letters tending to show that the club had lost no property and that all furniture and fixtures were accounted for, and that all these facts might have been ascertained by any member of the club who made the effort. The plaintiff in response to inquiry replied that he had nothing further to say. The hearing was closed and the vote of expulsion was passed.

The authority of the governing committee in this connection is stated in Article XXIV of the constitution of the association, in these words: "If any member shall be charged, in writing, . . . with conduct injurious to the good order, peace, or interest of the association . . . or if the committee shall become cognizant of such conduct, the committee shall thereupon inform the member charged, in writing; and if upon inquiry, and after giving the person so charged an opportunity to be heard, the governing committee shall be satisfied of the truth of the charge, and that the same demands such action," expulsion may follow. The

governing committee acted in conformity to the provisions of this article throughout. The charge made by the plaintiff was all embodied in a statement in writing over his own signature. It was in substance a complaint that Mr. Keates had misappropriated property. That the plaintiff had made it required no proof. To make such a charge unless it was true or appeared to be true well might be thought by any committee "conduct injurious to the good order, peace, or interest of the association."

The plaintiff contends, however, that there was evidence of malice and bad faith on the part of the governing committee, and that they did not act upon probable cause. He supports that contention on the grounds (1) that the members of the governing committee testified that they felt incensed and insulted by the charges of the plaintiff, (2) that they acted with unseemly haste in waiving the required notice for their first meeting after the annual meeting, (3) that the governing committee consulted with an attorney who prepared of his own motion according to the testimony an outline of the procedure which was followed in expelling the plaintiff, (4) that the governing committee had talked the matter over before the hearing and their vote of expulsion was simply the registration of a decision theretofore made, (5) that the plaintiff was refused the privilege of a stenographer and an attorney, (6) that slanders against the plaintiff were circulated about the club between the annual meeting and the vote of expulsion.

The governing committee was the only body charged by the constitution of the association with investigating such charges. Because they felt aggrieved by the conduct of the plaintiff did not disqualify them from acting. They alone could act in the premises. It is not malice or bad faith to do promptly or without waiting for usual formalities an act which otherwise is proper. It was in itself sagacious and savoring of justice to make a full disclosure of all the facts to an attorney and follow his advice as to procedure. Of course, if the charge against the plaintiff was voted not sustained, no special form was required. It was only in the event that the vote should be for his expulsion that procedure was important. That this was furnished in advance by a competent attorney was not evidence of malice or bad faith. It was not unnatural that the members of the governing committee should

have felt incensed that the charge against Keates should have been made in form and substance as it was by the plaintiff upon such weak grounds.  There is nothing to indicate that they were not ready to act fairly upon the evidence that might be presented at the hearing, or that they had prejudged the cause.  At the hearing before the committee the position taken by them that they had become cognizant of the conduct of the plaintiff was correct. It was not for them to go forward.  It was clearly the duty of the plaintiff then to justify what he had said.  The committee was not required to permit the plaintiff to be represented by counsel at the hearing.  It was not required by Article XXIV.  There was no adversary party.  It was a simple inquiry into a defined matter by procedure which inevitably would be more or less informal and at which rules of evidence would not be followed.  No suggestion has come to our attention indicating that the rights of the plaintiff were in any way jeopardized by the refusal to permit him to be represented by counsel.  There are numerous instances of bodies making decisions of importance where attorneys are not ordinarily present.  *Clark* v. *New England Telephone & Telegraph Co. ante,* 1, and cases collected.  The slanders about the plaintiff were not shown to have emanated from the defendants.  The fact that they were in circulation and came to the attention of the members of the governing committee was no evidence of their bad faith.  It could not rationally have been expected that the committee individually or collectively should have talked with the plaintiff concerning them.  They did not relate in any degree to the cause for which he was expelled.

A careful examination of the whole evidence, which need not further be narrated, demonstrates that it did not justify the inference that the defendants did not keep within the limits of the governing article of the constitution of the association, that they did not vote in good faith or that they were controlled by malice.

This aspect of the case is decisive.  The defendants' request for a ruling as matter of law that the plaintiff could not recover should have been granted.

It becomes unnecessary to consider in detail the plaintiff's exceptions.  His requests for rulings all become immaterial.  He has argued no exception to evidence offered on good faith and

malice which was excluded. An examination of the record fails to disclose any error in this regard. His exceptions are overruled.

The defendants' exceptions must be sustained. The case was heard by an auditor. The trial by jury was prolonged and full, and ample opportunity given to the plaintiff to present every aspect of his case. It is a case appropriate for the exercise of the power conferred by St. 1909, c. 236. In accordance with its terms, judgment is to be entered for the defendants.

*So ordered.*