GRACE M. SNAY *vs.* COLLIS LOVELY & others.

Suffolk.    November 14, 1930. — June 24, 1931.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & FIELD, JJ.

*Equity Jurisdiction,* Suit relating to internal affairs of voluntary association. *Labor Union.*

A suit in equity by a former member of a union against the union officials, seeking to enjoin the defendants from interfering with employment of the plaintiff, could not be maintained, although it appeared that the plaintiff could not obtain employment because he no longer was a member of the union, and that he was not a member because he had been suspended unjustly and on a charge which proper in-

vestigation would have proved false, where it appeared that the constitution of the union provided that the administrative power of the union, when no convention was in session, was vested in a general executive board and that "appeals against the decision of any officer, committee, board, union or council must be presented in writing to the next highest authority, and no appeals shall be considered unless the appellant conforms to the decision appealed from, pending decision on the appeal"; that the plaintiff appealed to the executive committee, which, on unwarranted grounds, had decided against him, but that he had not appealed to the convention.

The plaintiff in the suit above described, as an incident of membership, consented to be suspended or expelled in accordance with the constitution and rules of the union by its appropriate officers acting in good faith and in conformity to natural justice; and courts do not sit in review of decisions thus made by such officers, even though it may appear that there has been an honest error of judgment, an innocent mistake in drawing inferences or making observations, or a failure to secure all information available by a more acute and searching investigation.

An obligation impliedly arising from membership in the union above described was that the plaintiff must exhaust remedies open to him within the union before seeking relief in the courts for any wrong done him by the organization, unless it appeared that resort to those remedies would be illusory or vain; and there was in the record before this court on an appeal from a decree dismissing the bill no foundation for a contention that an appeal to the convention would have been fruitless, or that it would not have been treated fairly by the convention.

The mere facts, that the convention did not assemble until a year or more after the suspension of the plaintiff, and then in a city outside of the Commonwealth, standing alone, were not enough, in the circumstances disclosed in the suit above described, to be a basis of relief.

The single circumstance that the plaintiff, in the suit above described, by reason of his suspension from membership, was unable to secure work in union or closed shops, while no doubt resulting in damage to him, did not create a cause of action in connection with all the other facts above described.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on December 1, 1924, and described in the opinion.

The suit was transferred to the Superior Court, and was referred to a master. Material findings by the master are stated in the opinion. By order of *Qua*, J., there were entered an interlocutory decree overruling exceptions to and confirming the master's report and a final decree dismissing the bill. The plaintiff appealed.

*J. W. Tushins*, for the plaintiff.

*H. B. Ehrmann & J. W. Murdock*, for the defendants.

Rugg, C.J.   The plaintiff, on December 1, 1924, filed this suit in equity against certain defendants as representatives of the Boot and Shoe Workers Union, hereafter called the union, of which she was formerly a member, against other defendants as representatives of Stitchers Local Union No. 154, a subsidiary of the union, and against still other defendants as representatives of Brockton Shoe Manufacturers Association, these three groups being voluntary unincorporated associations.   The case was referred to a master, whose findings of fact must be accepted as final, since the evidence was not reported.   Those findings, so far as material to the grounds of this decision, are that the union is a widespread organization designed to organize into one union all shoe workers in North America.   It is affiliated with the American Federation of Labor.   It is mainly composed of local unions, the government of which is vested in the union.   To it all matters of general importance must be referred, and its decisions are final.   The administrative power of the union, when no convention is in session, is vested in a general executive board consisting of three specified officers and eight members elected at large.   Regular conventions of the union are to be held biennially, and one was held in 1925.   In the constitution of the union are stringent provisions against participation by members in strikes unauthorized by the union, and these further terms: "Any member leaving his or her employment in any Union Stamp factory, in violation of the arbitration contract because of any grievance or in any attempt to redress any grievance, either upon the member's own motion or under instructions from any authority to which such member holds allegiance, shall be fined ten dollars ($10.00), and immediately and automatically suspended until such fine is paid."   "All charges of whatever nature against any officer, member, union or council, must be presented in writing to the body before which the charge is made, and no defendant shall be found guilty without having upon written application a copy of the charges

preferred and opportunity for defense." "Appeals against
the decision of any officer, committee, board, union or
council must be presented in writing to the next highest
authority, and no appeals shall be considered unless the
appellant conforms to the decision appealed from, pending
decision on the appeal." The plaintiff was for many years
employed as a shoe stitcher and was a member of the union.
On March 14, 1923, she was discharged from her employ-
ment at the Eaton factory in Brockton because of lack of
work, and was not employed again until August 8, 1923,
when she went to work for a different employer. During
this interval she was not in good health and did not seek
employment. In May, 1923, shoe workers in Brockton
engaged in a strike which did not have the consent of the
union and was in fact an "outlaw" strike against the union.
A separate union of strikers was formed, but there was no
evidence that the plaintiff was ever affiliated with it. Fur-
ther findings of the master are these: "On June 11, 1923, the
plaintiff was fined $10 and suspended from the union for
going out on strike from the Eaton factory in Brockton,
Mass. She was in good standing in the union at this time.
No notice was given to her of charges made or of any hear-
ing thereon, nor was she notified of this fine and suspension
until she again went to work. This action was taken by the
union officials as the result of an unverified report received
by the union that she had gone on strike, coupled by an
arrest for loitering. No investigation was made of these
reports at this time. When notified of the action of the
union, she appealed. A hearing was given on her appeal
before a committee of the general executive board on Sep-
tember 23, 1923. On October 25, 1923, she was notified
that her appeal was denied. The committee of the general
executive board which heard her appeal received only
evidence of the plaintiff and of her husband on the day of
the hearing. This evidence was that the plaintiff did not
go out on strike, and was then uncontradicted. In con-
sidering her case the committee decided that they would,
in accordance with their custom in what they considered
to be doubtful cases, refer the matter to an investigator,

which they did. This investigator reported that he had consulted the person who was foreman of the Eaton factory at the time she left there; and that she went out on strike. It was upon the strength of this report that the board denied the appeal. . . . As no strike existed at the time that her employment ceased at the Eaton factory, it is quite obvious that she did not go out on strike; and it is further obvious that a checking up by the investigator of the records of Eaton Company, which he did not trouble to do, would have disclosed that fact. The finding of the general executive board was clearly wrong and was based upon hearsay evidence given to them by an investigator who failed to make a complete investigation. A careful examination of this evidence by the board, or its committee, would have shown the justice of the appellant's (this plaintiff's) position. . . . In August, 1923, the plaintiff paid $4.25 to the union for the purpose of reinstatement and for dues, which said money was accepted by the union with her due book. The union refused or neglected to give her a new book, for the reason that this fine appeared against her upon their records." The plaintiff thereafter worked at several "union" shops, but was forced to leave after a short period of employment because she was not in good standing in the union.

The master reported that allegations of conspiracy to injure the plaintiff and to deprive her of her livelihood, of the use of a blacklist against her and of making threats against her, were not supported; but did find that by reason of the facts hereinbefore stated she was unable to secure employment in any union factory.

The plaintiff, by becoming a member of the union and agreeing to support it, entered into an obligation in the nature of a contract to become bound by its constitution and governing rules so far as not inconsistent with controlling principles of law. As an incident of membership she consented to be suspended or expelled in accordance with the constitution and rules of the union by its appropriate officers acting in good faith and in conformity to natural justice. Courts do not sit in review of decisions thus made by such officers, even though it may appear that there has

been an honest error of judgment, an innocent mistake in drawing inferences or making observations, or a failure to secure all information available by a more acute and searching investigation. *New England Trust Co.* v. *Abbott*, 162 Mass. 148, 154. *Grosvenor* v. *United Society of Believers*, 118 Mass. 78. *Shinsky* v. *Tracey*, 226 Mass. 21, 22. *Richards* v. *Morison*, 229 Mass. 458, 461. *Joslin* v. *Boston & Maine Railroad*, 274 Mass. 551, 555. *Powell* v. *United Association of Plumbers & Steamfitters*, 240 N. Y. 616. *George* v. *Holstein-Friesian Association*, 238 N. Y. 513, 524.

Another obligation impliedly arising from her membership in the union was that the plaintiff must exhaust remedies open to her within the union before seeking relief in the courts for any wrong done her by the organization, unless it appears that resort to those remedies would be illusory or vain. *Hickey* v. *Baine*, 195 Mass. 446. *Correia* v. *Portuguese Fraternity*, 218 Mass. 305. *Barbrick* v. *Huddell*, 245 Mass. 428, 436. *Puleio* v. *Sons of Itala & Neighborhood Mutual Benefit Society*, 266 Mass. 328. *Agrippino* v. *Perrotti*, 270 Mass. 55. The constitution of the union plainly provides that the plaintiff might have appealed from the adverse decision of the general executive board to the convention. That convention was the body next above the general executive board and had power to reverse and annul its decisions. Her failure to avail herself of this remedy for the redress of grievances afforded by the fundamental law of the union prevents her asking the interposition of a court of equity. There is in the record no foundation for a contention that such an appeal would have been fruitless, or that it would not have been treated fairly by the convention. *Mulcahy* v. *Huddell*, 272 Mass. 539, 546. The factor that the convention did not assemble until a year or more after the suspension of the plaintiff, and then in a city outside of the Commonwealth, may be important, in connection with others having an overreaching or crafty aspect, in determining whether a particular contract is so harsh and unreasonable as to be offensive to sound legal principles. See *Fritz* v. *Knaub*, 103 N. Y. Supp. 1003, affirmed 124 App. Div. (N. Y.) 915; *Bricklayers', Plasterers' & Stonemasons'*

*Union* v. *Bowen*, 183 N. Y. Supp. 855, affirmed 198 App. Div. (N. Y.) 967; *Kunze* v. *Weber*, 197 App. Div. (N. Y.) 319. But, standing alone, it is not enough in the circumstances here disclosed to be a basis for relief. Commonly, contracts voluntarily executed with knowledge of their contents by rational beings acting on their own judgment ought to be enforced. *Sullivan* v. *Roche*, 257 Mass. 166, 171. *Florimond Realty Co. Inc.* v. *Waye*, 268 Mass. 475, 479–480. The single circumstance that the plaintiff, by reason of her suspension from membership, was unable to secure work in union or closed shops, while no doubt resulting in damage to her, does not create a cause of action in connection with all the other facts here disclosed. *Hoban* v. *Dempsey*, 217 Mass. 166. *Shinsky* v. *O'Neil*, 232 Mass. 99. *Clark* v. *Morgan*, 271 Mass. 164, 169. The case at bar is distinguishable from *Berry* v. *Donovan*, 188 Mass. 353, *Hanson* v. *Innis*, 211 Mass. 301, *Shinsky* v. *Tracey*, 226 Mass. 21, where relief was granted because there was a wrongful interference by the defendants with the rights of the plaintiffs. It is also distinguishable from *Malloy* v. *Carroll*, 272 Mass. 524, where the plaintiff had exhausted his remedies within the union.

*Decree dismissing bill affirmed.*