122 Ariz. 399 (1979)
595 P.2d 191
Florance ASPELL, a married woman, Appellant,
v.
AMERICAN CONTRACT BRIDGE LEAGUE OF MEMPHIS, TENNESSEE, a corporation, the Tucson Unit of the American Contract Bridge League, an Unincorporated Association, Allen V. Shaw, Walter Shiel, David Reiner, John Barnard, William A. Baldwin, Barbara Downing, Verda Robinson, Robert Bates, T.G. McQuade, Frank Fiems, Sharon Kasle, Raymond Brown, Appellees.
No. 2 CA-CIV 2827.
Court of Appeals of Arizona, Division 2.
February 16, 1979.
Rehearing Denied March 21, 1979.
Review Denied April 17, 1979.
*400 Law Offices of Paul G. Rees, Jr., P.C. by Paul G. Rees, Jr., Tucson, for appellant.
Lesher, Kimble & Rucker, P.C. by Darwin J. Nelson, Tucson, for appellee American Contract Bridge League of Memphis, Tennessee.
Slutes, Browning, Zlaket & Sakrison, P.C. by William D. Browning, Tucson, for appellees Tucson Unit of the American Contract Bridge League, et al.
OPINION
HOWARD, Judge.
Appellant, plaintiff below, claims that the appellees defamed her and wrongfully deprived her of her rights as a member of the American Contract Bridge League (ACBL) and the Tucson Unit of the ACBL (Tucson Unit), and as a citizen of Arizona and the United States. At the close of appellant's case, the trial court directed a verdict for appellees. The evidence will be viewed in a light most favorable to appellant. Tanner v. Levie, 105 Ariz. 149, 460 P.2d 995 (1969).
Appellant was an active member of the ACBL and the Tucson Unit. As a result of dissension within the Tucson Unit, in 1973 the board of directors, of which appellant was the president, resigned en masse. Appellant then withdrew Unit funds from its bank account and gave them to a lawyer who deposited them in his trust account. This necessitated a lawsuit in order for the new board to recover the funds. In 1974 the new board of directors voted to suspend appellant from the ACBL for two years on the ground of misappropriation of the Unit funds. This action by the board of the Tucson Unit was affirmed by both the regional and national organizations. The minutes of the meeting of the Tucson Unit at which appellant was suspended were distributed to the local clubs of the Tucson Unit for posting and to executives of the ACBL and the regional organization. An announcement of her suspension was published three times in the ACBL's national bulletin, which is sent to all member clubs.
In granting appellees' motion for a directed verdict on the defamation charge, the trial court found that the words "misappropriation of unit funds" are insufficient to establish libel per se, and that, because appellant had failed to plead and prove special damages, she did not have a cause of action for libel per quod. It also found that they were true. We affirm the trial court's decision but do not reach the issues that decision was based on because we find that the appellees were protected by a conditional privilege.
In Arizona, a communication is protected by a conditional privilege when the speaker has a duty to make the communication, and it is made in the performance of this duty. Roscoe v. Schoolitz, 105 Ariz. 310, 464 P.2d 333 (1970). The duty may be a legal, moral or social one. Long v. Mertz, 2 Ariz. App. 215, 407 P.2d 404 (1965). In other states, this definition of a conditional privilege has been found to apply to the disciplinary proceedings of a voluntary association where the subject of the communication is a member of the association. Indianapolis Horse Patrol, Inc. v. Ward, 247 Ind. 519, 217 N.E.2d 626 (1966); Fisher v. Myers, 339 Mo. 1196, 100 S.W.2d 551 (1936); and see 53 C.J.S. Libel and Slander § 118 (1948); 50 Am.Jur.2d Libel and Slander Sec. 306 (1970). The board members here were acting in the capacity of officers of the Tucson Unit, in accordance with their duty to Unit members to regulate Unit affairs.
Other than contending that malice was shown, appellant has not challenged appellees' assertion of a conditional privilege in *401 her brief. We note that there are aspects of the proceedings against her which raise a factual question of whether there was compliance with the ACBL's regulations and the Tucson Unit's by-laws. For example, the by-laws governing disciplinary proceedings speak only of complaints which involve conduct or ethics at a tournament, thus raising the question of whether the board had the power to discipline appellant. The ACBL regulations require that a unit give an accused member the opportunity to question his accusers during its preliminary investigation, before written charges are drawn up; there is no evidence that this was done. The by-laws also require a 75% vote for suspension; the minutes of the meeting show that the board members agreed by a unanimous vote that appellant did misappropriate the funds, but only five of the seven, or 71%, voted in favor of the two-year suspension.
Assuming arguendo that the proceedings against appellant were not in compliance with the regulations and by-laws, we do not believe that the board members' qualified privilege was dispelled. They were still acting pursuant to their duty to the members of the Tucson Unit to regulate the affairs of the Unit when they evaluated and criticized the actions of appellant that had directly affected, and possibly injured, the interests of the Unit.
Whether a communication was privileged is a question for the court. Roscoe v. Schoolitz, supra. The burden is then on the plaintiff to show that the privilege was abused by showing that the defendant was acting with malice in fact. Roscoe v. Schoolitz, supra. This is a question for the jury, but where there is no evidence of malice, the court can dispose of the issue. Sewell v. Brookbank, 119 Ariz. 422, 581 P.2d 267 (App. 1978). We find that appellant failed to provide any evidence that appellees acted with malice.
Malice is established by showing that appellees acted in reckless disregard of the truth, or with actual knowledge that their statements were false. Sewell v. Brookbank, supra. The statement that appellant misappropriated Unit funds was the board's conclusion about a controversial series of events. The fact that the board knew, or should have known, that appellant did not consider that by her actions she had misappropriated funds does not mean that their conclusion was false. Nor does the evidence, viewed in the light most favorable to appellant, show that the board had a reckless disregard for the truth. The minutes of the board meeting which contained the allegedly defamatory statement described the grounds for their conclusion, so readers could decide for themselves whether there had been a misappropriation of funds. The minutes state that the board discussed the situation for over an hour. Nor do we believe the procedural irregularities show the required malice. As to the appellees who were not members of the board, appellant has made no attempt to argue that they acted with malice.
The trial court also directed a verdict for the appellees for lack of evidence on appellant's claim that she was deprived of her rights as a member of the ACBL and the Tucson Unit, and that she was deprived of her rights as a citizen of the United States and Arizona. We affirm the directed verdict on these claims.
Appellant frames her claim for relief for deprivation of her rights as a member as one in tort, and seeks compensation for injury to her reputation, for the ridicule and scorn she has been subjected to, and asks for punitive damages. Tortious actions are tautologically defined as actions which invade an interest that is legally protected against such invasion. See Restatement (Second) of Torts Sec. 6, Comment a (1965). This definition focuses attention on appellant's interest in her membership in the ACBL and Tucson Unit, an interest which, she argues, was wrongfully invaded by her improper suspension.
The relationship between members of a voluntary association is contractual. Savoca Masonry Co., Inc. v. Homes & Son Const. Co. Inc., 112 Ariz. 392, 542 P.2d 817 (1975); Cason v. Glass Bottle Blowers Ass'n, *402 37 Cal.2d 134, 231 P.2d 6 (1951); 6 Am.Jur.2d Associations and Clubs Sec. 5 (1963). Although some writers have found conceptual difficulties with the idea that, by joining a club, a person has created separate contracts with each person who belongs to the shifting membership, Note, Judicial Control of Actions of Private Associations, 76 Harv.L.Rev. 983, 999 (1963); Chaffee, The Internal Affairs of Associations Not for Profit, 43 Harv.L.Rev. 993, 1002-1003 (1930), for our purposes it is clear that the rights and obligations among appellant, the ACBL and Tucson Unit, and the members thereof, were not imposed by law, but were assumed by their voluntary actions. When a voluntary association wrongfully disciplines one of its members, the terms of the contract setting out appropriate grounds and procedures for disciplinary action have been breached. Cason v. Glass Bottle Blowers Ass'n, supra.
A breach of contract is not a tort unless the law imposes a duty on the relationship created by the contract which exists apart from the contract. Felder v. Great American Insurance Co., 260 F. Supp. 575, (D.C.S. 1966); W. Prosser Law of Torts Sec. 92 at 617 (1971). Thus, appellees' breach by wrongfully suspending appellant is not tortious unless the law provides protection for one's membership in such a voluntary association.
We have found several cases dealing with tort liability for wrongful expulsion from voluntary associations. We can distinguish most of them, which deal with labor unions and trade or professional associations. The interest there which the law protects is the member's interest in pursing his chosen career or his interest in his professional status. Cason v. Glass Bottle Blowers Ass'n, supra; Nissen v. International Brotherhood of Teamsters, Chauffeurs, Stablemen & Helpers of America, 229 Iowa 1028, 295 N.W. 858 (1941); Sweetman v. Barrows, 263 Mass. 349, 161 N.E. 272 (1928); Shinsky v. Tracey, 226 Mass. 21, 114 N.E. 957 (1917); Brennan v. United Hatters of North America, Local No. 17, 73 N.J.L. 729, 65 A. 165 (1906); Taylor v. Favorito, 48 Ohio L.Abs. 524, 74 N.E.2d 768 (Ohio App. 1947); Taxicab Drivers' Local Union No. 889 v. Pittman, 322 P.2d 159 (Okl. 1958); International Printing Pressmen and Assistants' Union of North America v. Smith, 145 Tex. 399, 198 S.W.2d 729 (1947); Orchard v. Tunney, [1957] Can.S.Ct. 436, [1957] 8 D.L.R.2d 273, 36 Can.B.Rev. 83 (1958). The majority of these cited cases articulate that the tort for which the plaintiff is compensated is the association's wrongful interference with his employment. See Orchard v. Tunney, supra. In both Cason v. Glass Bottle Blowers Ass'n, supra, and International Printing Pressmen and Assistants' Union v. Smith, supra, the courts explain that the plaintiff has a cause of action in tort for interference with his right to work, and a cause of action in contract for the loss of his rights as a member of the defendant organization. We can also distinguish those cases that deal with benevolent associations, because there the courts are protecting the members' interest in the associations' insurance-like programs. Independent Order of Sons and Daughters of Jacob of America v. Wilkes, 98 Miss. 179, 53 So. 493 (1910).
There are innumerable interests which can be injured by expulsion or suspension from a voluntary association. A member's interest in participating in political activity can be injured by expulsion from a political organization; his interest in worshipping as he chooses can be injured by expulsion from his church; or his interest in his education and potential career can be injured by expulsion from a private educational institution. See Judicial Intervention in the Conduct of Private Associations: Bases for the Emerging Trend of Judicial Activism, 4 N.Y.U.Rev.L. & Soc. Change 61 (1974).
We need not consider whether legal protection should be extended to these interests. Appellant here was prohibited from playing bridge within the auspices of any unit of the ACBL. While there is no evidence that the suspension attempted to bar members from playing bridge with appellant on an individual basis, the opportunities for play were undoubtedly smaller outside of the organizational framework provided *403 by the ACBL. She could not participate in ACBL tournaments, tournaments which probably add a significant element of challenge and enjoyment to the game of an avid and skilled bridge player such as appellant. She was also barred from any other activity of any ACBL unit. Thus, the suspension not only interfered with appellant's social interests, it also substantially hindered her ability to engage in an activity from which she derived a significant amount of pleasure.
While we have found no cases which refuse to allow a tort action for wrongful expulsion from a social club, we have found only one case, Richards v. Morison, 229 Mass. 458, 118 N.E. 868 (1918), in which such a tort action was brought. In Richards, the judgment for the plaintiff was reversed because the plaintiff failed to show malice. The court did not confront the question of whether the actions complained of were, or should be, tortious.
The gravamen of appellant's complaint is that she was prevented from playing bridge in the manner which she preferred. Any rights which she had to play bridge in that manner were created by her contractual relationship with the ACBL and the Tucson Unit. In the absence of such a contract, the law will not require that someone play bridge with a person who desires to play with him. Nor will the law compensate the rejected player for his hurt feelings.
A leading writer in this area has suggested that membership in a voluntary association should be recognized as creating a status, carrying with it legal rights and obligations beyond those articulated by the contracting parties, just as the relationships between landlord and tenant, husband and wife, and master and servant do. Chaffee at 1007. He explains, however, that the availability of judicial protection for membership should depend on the nature of the injury and on policy considerations as to the desirability of judicial interference. Chaffee at 1008.
Whether the inquiry be labeled as a search for a legally protected interest or a legally protected status, we believe the analysis is the same. Courts have not yet been willing to extend legal protection from ostracism, Warren v. June's Mobile Home Village & Sales, Inc., 66 Mich. App. 386, 239 N.W.2d 380 (1976), or provide compensation for "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Restatement (Second) of Torts Sec. 46, Comment d (1965). The decision to exclude a person from one's social activities should be one of the more remote objects of judicial scrutiny. The fact that the parties voluntarily agree to associate with each other should not create for the courts the obligation to adjudicate such injuries, or impose liability beyond that which was within the range of contemplation of the contracting parties.
As to the rest of appellant's claim, she does not say of which of her rights as a United States and Arizona citizen she was deprived, or what comprised the state action.
Courts do look to concepts of fundamental fairness which have been articulated in constitutional cases to decide whether the association's proceedings have been in good faith. If certain fundamental safeguards, such as notice or an unprejudiced adjudicator, have not been provided, courts have found that the member has been wrongfully disciplined, and thus, the association has breached its contract with him. Arizona Osteopathic Medical Association v. Fridena, 105 Ariz. 291, 463 P.2d 825 (1970); Blenko v. Schmeltz, 362 Pa. 365, 67 A.2d 99 (1949). By doing so, a court is not imposing a constitutional obligation on the private association to afford its members due process.
In Quimby v. School District No. 21 of Pinal County, 10 Ariz. App. 69, 455 P.2d 1019 (1969), this court cited cases where constitutional obligations have been imposed on voluntary associations and held that an association which regulated which students could participate in the interscholastic sports programs of its members, public high schools, was limited by the Equal Protection clauses of the Arizona and United States constitutions. The associations in Quimby and the *404 cases cited therein were found to exercise quasi-governmental powers or determine access to state-supported institutions. The principles by which constitutional obligations were extended to them are not applicable to the ACBL or the Tucson Unit.
Affirmed.
RICHMOND, C.J., and HATHAWAY, J., concurring.