737 P.2d 1092

**Neil R. HIRSCH, M.D., Plaintiff-Appellant,**

v.

**Dennis C. COOPER, M.D. and Linda Cooper, husband and wife, Defendants-Appellees.**

**No. 1 CA–CIV 7955.**

Court of Appeals of Arizona, Division 1, Department A.

Oct. 23, 1986.

Reconsideration Denied March 4, 1987.

Review Denied May 27, 1987.

Gust, Rosenfeld, Divelbess & Henderson by Terrance C. Mead and James F. Henderson, Phoenix, for plaintiff-appellant.

Snell and Wilmer by John J. Bouma, Barry D. Halpern and Eileen Moore, Phoenix, for defendants-appellees.

## OPINION

GREER, Presiding Judge.

This is an appeal from a summary judgment entered on June 29, 1984 in favor of defendant-appellee Dennis C. Cooper, M.D. On February 2, 1982, plaintiff-appellant Neil R. Hirsch, M.D. filed a six-count complaint against the defendant alleging slander, libel, false light invasion of privacy, conspiracy to defame, intentional infliction of emotional distress, and intentional interference with medical practice. The main issue presented by this appeal is whether the facts of this case present an issue to be determined by a jury so as to preclude the granting of summary judgment. We have jurisdiction of this appeal pursuant to A.R.S. § 12–2101(B). We affirm in part and reverse in part.

FACTS:

In February of 1981, Dr. Cooper, a general ophthalmologist treated a patient who he determined was in need of corneal surgery. Dr. Cooper referred the patient to Edward L. Shaw, M.D., considered by Dr. Cooper to be the most qualified physician to perform such surgery. The patient sought financial assistance from the Lions Sight and Hearing Foundation (Founda-

tion). The Foundation's coordinator, Ms. Henrietta Ellis, discussed this matter with Dr. Cooper by telephone. Details of that conversation are in dispute.

According to Ms. Ellis, she asked Dr. Cooper if the patient could be referred to another physician, since Dr. Shaw would not work with the Foundation at reduced rates. When Dr. Cooper inquired as to whom the patient would be referred, Ms. Ellis testified that she said "Well, off the top of my head, I don't know. But probably Neil Hirsch or someone. . . ." She then testified that Cooper replied "Neil Hirsch, I wouldn't send my dog or cat to him."

According to Dr. Cooper's version of the conversation Ms. Ellis asked if Dr. Cooper would object to the patient being referred to Dr. Hirsch since he would do the surgery for a reduced fee. Dr. Cooper then asked if the patient had requested another physician and was told "No." Dr. Cooper then stated that if he had wanted the surgery to be performed by a general ophthalmologist he would have done it himself, since there is no comparison between the skills of a corneal fellowship-trained surgeon and those of a general ophthalmologist. Ms. Ellis again stated that appellant would do the surgery for less. Dr. Cooper then became angry and stated that regardless of what Dr. Hirsch said, "A patient was not a piece of meat to be put up for auction." He also stated that he resented Ms. Ellis trying to steer the patient to another doctor when it was not requested. Dr. Cooper denies making the "dog and cat" statement.

On February 19, 1981, a few days after that conversation took place, appellant's application for membership in the Phoenix Ophthalmological Society was denied. This society is an informal association of ophthalmologists which has no functions or powers of peer review. Appellant requested that he be informed of the reasons for denial of his application. At the next meeting of the society on March 16, 1981, interested members of the Association were asked to stay at the conclusion of the meeting and discuss Dr. Hirsch's application. Dr. Cooper, along with "ten or twelve"

other doctors participated in the discussion. Dr. Cooper testified that he heard many accusations leveled at Dr. Hirsch. These included allegations of overcharging, of Dr. Hirsch being the subject of a medicare fraud probe, of his doing excessive blephroplasties, of his performing surgery with the wrong instruments, finding a highly disproportionate number of cataract cases in nursing home patients he screened, as well as many other complaints. According to Dr. Cooper, the general tenor of the discussion was that appellant was an unfit and unethical surgeon.

On March 24, 1982, Dr. Cooper sent a letter to the Maricopa County Medical Society's Ethics Committee. This letter reported the events surrounding the referral of Dr. Cooper's patient to Dr. Shaw and asked the ethics committee to make an investigation into possible unethical conduct on appellant's part. The letter also inferred that Dr. Hirsch had offered free office space to the Foundation, and also alleged other instances of misconduct which Dr. Cooper said could not be disclosed in the letter since they had been repeated to him in confidence. Copies of this letter were sent to Dr. Shaw and Dr. Louis Rosenbaum, president of the Opthalmological Society.

Between July 1980 and June 1981, appellant had performed 30% of the Lions Foundation surgeries, about forty in number. From June 1981 until March 1982 appellant received only "three or four" referrals from the Foundation.

In determining whether a grant of summary judgment is proper, we are required to view the facts in a light most favorable to the party opposing summary judgment. A grant of summary judgment is not proper when there is a genuine issue of material fact or even the slightest doubt as to the facts. *Farmers Ins. Co. v. Vagnozzi,* 138 Ariz. 443, 448, 675 P.2d 703, 708 (1983).

*Slander Claim*

There is clearly a dispute as to whether the alleged slanderous statement of Dr. Cooper that he "wouldn't send his dog or cat" to Dr. Hirsch was ever made. At first blush, summary judgment was not proper, since there is at least "slight doubt" as to

an essential fact. *Vagnozzi,* at 448, 675 P.2d at 708. Appellee would have us believe that even if the statement were made as alleged, he is still entitled to judgment as a matter of law. We disagree.

■ A statement which tends to injure a person in his profession is slanderous per se and is actionable without proof of special damages. Damages are presumed. *Modla v. Parker,* 17 Ariz.App. 54, 56–57, 495 P.2d 494, 496–97 (1972). We find that appellee's "dog and cat" statement, if made, fairly fits into this category.

Appellee contends that *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) mandates that no presumed damages may be awarded without proof of actual damage. We find *Gertz* inapposite in our facts. The *Gertz* decision held that without a showing of actual malice, any damages could only be awarded on the basis of proof of actual injury. *Gertz* involved a private plaintiff, but the subject matter involved was of public interest.

■ In *Dun & Bradstreet v. Greenmoss Builders,* 472 U.S. 749, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985), the Supreme Court held in cases brought by a private plaintiff where no matter of public concern is involved, that no actual malice is required in order to sustain an award of punitive or presumed damages. We find *Dun & Bradstreet* to be controlling in this case. "In light of the reduced constitutional value of speech involving a matter of no public concern, we hold that the state interest adequately supports awards of presumed and punitive damages—even absent a showing of actual malice." *Id.* at 761, 105 S.Ct. at 2946, 86 L.Ed.2d at 603–04. Thus, the alleged "dog and cat" statement made by appellee, is actionable per se. Appellant was not required to prove special damages in order to proceed with his action.

■ We also find that the evidence suggests that appellant may have in fact suffered special damages. The fact that the number of referrals to appellant from the Lions Foundation dropped in such a dramatic fashion and the timing of such de-

crease raises a factual issue for resolution by the trier of fact.

■ Appellee also contends that such a statement, even if made, was privileged. He cites *Restatement (Second) of Torts* §§ 595, 596 in support of this proposition. Those sections provide as follows:

Section 595. Protection of Interest of Recipient or a Third Person.

(1) An occasion makes a publication conditionally privileged if the circumstances induce a correct or reasonable belief that

(a) there is information that affects a sufficiently important interest of the recipient or a third person, and

(b) the recipient is one to whom the publisher is under a legal duty to publish the defamatory matter or is a person to whom its publication is otherwise within the generally accepted standards of decent conduct.

(2) In determining whether a publication is within generally accepted standards of decent conduct it is an important factor that

(a) the publication is made in response to a request rather than volunteered by the publisher or

(b) a family or other relationship exists between the parties.

Section 596. Common Interest

An occasion makes a publication conditionally privileged if the circumstances lead anyone or several persons having a common interest in a particular subject matter correctly or reasonably to believe that there is information that another sharing the common interest is entitled to know.

Whether a privilege attaches to a communication is a question for the court. *Aspell v. American Contract Bridge League*, 122 Ariz. 399, 401, 595 P.2d 191, 193 (App. 1979). We agree with appellee that under these sections a conditional privilege existed. Dr. Cooper was speaking with Ms. Ellis concerning his patient who had been referred to Dr. Shaw for corneal surgery. That discussion concerned the future care of the patient and involved matters of a "common interest," as well as "information

that affects a sufficiently important interest of the recipient or a third person." Such a privilege, if not abused, would protect appellee against liability.

■ A conditional privilege is abused and forfeited when a defendant acts with malice in fact. *Green Acres Trust v. London*, 141 Ariz. 609, 616, 688 P.2d 617, 624 (1984). Whether such abuse occurred is a factual question to be resolved by a jury. *Aspell*, 122 Ariz. at 401, 595 P.2d at 193. Malice in fact is established by showing that the defendant acted with actual knowledge that a statement was false, or that he acted in reckless disregard of its truth. *Id.* It is uncertain what basis, if any, Dr. Cooper had for making the alleged "dog and cat" statement to Ms. Ellis. It may be shown that Dr. Cooper made the statement in reckless disregard for its truth. A trier of fact could therefore reasonably conclude that Dr. Cooper acted with malice in fact and forfeited any privilege which may have attached to this communication.

### Libel

■ In his libel claim, appellant alleges harm suffered as a result of the letter sent by appellee regarding appellant's possible violation of ethical standards. Libel is the publication of written words which are false and defamatory. A publication which impeaches the honesty, integrity, or reputation of a person, or which is damaging to his professional reputation is libelous per se and presumptive damages may be awarded without proof of special damages. *Peagler v. Phoenix Newspapers, Inc.*, 114 Ariz. 309, 316, 560 P.2d 1216, 1223 (1977). The court in *Peagler* however, held that pursuant to *Gertz*, in order for a public-figure plaintiff to recover presumed damages there had to be a showing of actual malice. In line with our analysis above, we find *Dun & Bradstreet* rather than *Gertz* controlling in the case at bar since the alleged libelous statement involves private facts about a private plaintiff. Here, the jury could find a libel per se that would support presumed damages even absent a showing of actual malice.

Appellee claims that the publication of this letter is privileged as to each party to whom it was sent under the "Common Interest" privilege of § 596 of the *Restatement (Second) of Torts* as well as under the obligations of his professional duties. We partially agree. The publication of the letter to the Maricopa County Medical Society Ethics Committee clearly falls within the range of the § 596 privilege.

■ There is also a statutory provision cited by appellee which is applicable. "Any doctor of medicine or any competent county society ... shall report to the board any information that such doctor ... may have which appears to show that a doctor of medicine is or may be medically incompetent or is or may be guilty of unprofessional conduct...." A.R.S. § 32–1451(A) (1976). We hold that communication to proper medical peer review societies is conditionally privileged. In so holding, we decline appellee's invitation to make the privilege absolute. To do so would ignore the clear language of the statute that such persons "who report or provide information to the board *in good faith* shall not be subject to an action for civil damages as a result thereof...." *Id.* (emphasis added). Thus, appellee's publication of the letter to the Maricopa County Medical Society Ethics Committee is privileged and not actionable unless it can be shown that the privilege was abused.

■ Appellee also claims publication of the letter to Dr. Shaw is privileged under the same section. We agree because Dr. Shaw was the surgeon to whom Dr. Cooper originally referred the patient. It was this patient's request for financial assistance which led to the events giving rise to this lawsuit. Since the letter concerned treatment to be received by the patient we find that the common interest privilege is applicable to these facts.

■ As we have stated above, a privilege is abused if it is made with actual malice. Actual malice exists when the statement is either knowing false or made with reckless disregard of its truth or falsity. *Green Acres Trust,* 141 Ariz. at 616, 688 P.2d at 624. Inasmuch as Ms. Ellis'

deposition testimony contradicts the contents of the appellee's letter with regard to Dr. Hirsch's alleged offering of free office space to the Foundation, evidence exists which should be considered by a jury to determine whether appellee abused the privilege he possessed in publishing to these two parties. Thus, summary judgment on the libel count was improper.

■ In addition, we find that the publication of the letter to Dr. Rosenbaum as president of the Opthalmological Society was not within any privilege, since such a group has no official peer review power. As to the privileged publication made to Dr. Shaw and to the Maricopa County Medical Society Ethics Committee, we find that a jury could reasonably find that Dr. Cooper abused his privilege by publishing the letter with actual malice.

*Intentional Interference with Medical Practice*

■ In Arizona, an intentional and unjustified interference with a valid business expectancy constitutes an actionable tort. *Pre-Fit Door, Inc. v. Dor-Ways, Inc.,* 13 Ariz.App. 438, 440, 477 P.2d 557, 559 (1970). The elements of this cause of action are:

(1) The existence of a valid contractual relationship or business expectancy;

(2) knowledge of the relationship or expectancy on the part of the interferor;

(3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and

(4) resultant damage to the party whose relationship or expectancy has been disrupted.

*Antwerp Diamond Exch. v. Better Business Bureau,* 130 Ariz. 523, 529–30, 637 P.2d 733, 739–40 (1981). In addition to the above requirements, our supreme court recently adopted the requirement that an interference be "improper" for liability to attach. *Wagenseller v. Scottsdale Memorial Hosp.,* 147 Ariz. 370, 388, 710 P.2d 1025, 1043 (1985).

We find nothing inherently wrongful in 'interference' itself. If the interferer is

to be held liable for committing a wrong, his liability must be based on more than the act of interference alone. Thus, there is ordinarily no liability absent a showing that defendant's actions were improper as to motive or means.

*Id.* The *Wagenseller* case adopted the seven factors enumerated in *Restatement (Second) of Torts* § 767 to be used in determining if an interference is improper.

(a) the nature of the actor's conduct.

(b) the actor's motive.

(c) the interests of the other with which the actor's conduct interferes.

(d) the interest sought to be advanced by the actor.

(e) the social interest in protecting the freedom of action of the actor and the contractual interests of the other.

(f) the proximity or remoteness of the actor's conduct to the interference and

(g) the relations between the parties.

*Wagenseller,* at 387, 710 P.2d at 1042 quoting *Restatement (Second) of Torts* § 767.

■■■ Two facts in this case are important in resolving this issue. First of all, in the one-year period preceeding the making of the alleged defamatory statements, appellant handled 30% of the foundation's surgeries. This leads us to conclude that an issue exists as to whether Dr. Hirsch had a business expectancy relationship with the Lions Foundation. Secondly, in the period after the statement had been made, the number of referrals from the Lions Foundation to Dr. Hirsch decreased dramatically. Thus, there appears to be an issue as to damages which a jury must resolve. We find that after assuming the defamatory nature of the statement and considering the timing of the incidents involved in this case that a jury question exists as to whether such a statement, if made, was improper under *Wagenseller* and made with knowledge and intent sufficient to constitute a business interference on the part of Dr. Cooper.

We therefore find that summary judgment was improper on the intentional interference with medical practice claim as well as the slander and libel claims. As to those claims, we reverse the trial court's grant of summary judgment and remand this case to the trial court for proceedings consistent with this analysis.

As to the false light invasion of privacy, conspiracy to defame and intentional infliction of emotional distress claims, we affirm the trial court's grant of summary judgment because we find no factual issues to be resolved by a jury.

■■■ In *Davis v. First Nat'l Bank,* 124 Ariz. 458, 462, 605 P.2d 37, 41 (App. 1979), we noted the "striking similarity" between the torts of invasion of privacy and intentional infliction of emotional distress. Furthermore, we incorporated the requirements of a claim on intentional infliction of emotional distress into an action for false light invasion of privacy in *Duhammel v. Star,* 133 Ariz. 558, 561–62, 653 P.2d 15, 18–19 (App.1982). *See also, Rutledge v. Phoenix Newspapers, Inc.,* 148 Ariz. 555, 557, 715 P.2d 1243, 1245 (App. 1986) (intentional infliction of emotional distress requirements incorporated into invasion of privacy based on publicity given to private life claim). In order to state a claim for relief under these theories, the element of extreme and outrageous conduct must be present. *Davis,* 124 Ariz. at 461–62, 605 P.2d at 40–41. Such conduct in order to be extreme and outrageous must be so "outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* quoting *Restatement (Second) of Torts* § 46, comment d (1965). It must be conduct "at the very extreme edge of the spectrum of possible conduct." *Watts v. Golden Age Nursing Home,* 127 Ariz. 255, 258, 619 P.2d 1032, 1035 (1980). Such a determination is one to be made by the court as a matter of law. *Id.* We find nothing in the record to indicate that Dr. Cooper's conduct, while arguably objectionable and improper, rises to the requisite level to support this tort. Therefore, we find further consideration of these two tort theories unnecessary.

In summary, as to appellant's claim of conspiracy to defame, such is not recognized as a tort under Arizona law. We therefore affirm the trial court's grant of summary judgment for appellee on the conspiracy to defame, false light invasion of privacy, intentional infliction of emotional distress claims, and reverse the summary judgment on the libel claim. This matter is remanded for further proceedings.

MEYERSON and KLEINSCHMIDT, JJ., concur.