804 P.2d 133

Marge ROGUS, Sylvia Waters, and Gary Musselman, Plaintiffs–Appellants,

v.

David L. LORDS, Jane Doe Lords, Husband and Wife, Linda Hahn and John Doe Hahn, Wife and Husband, Defendants–Appellees.

No. 1 CA–CV 89–236.

Court of Appeals of Arizona, Division 1, Department B.

Jan. 10, 1991.

Burger, Gibson, Matheson, Whitney & Weber by Rodney M. Matheson, and Robert J. Weber, P.C., Mesa, for plaintiffs-appellants.

Cawood & McKindles, P.C. by John M. McKindles, Mesa, for defendants-appellees.

## OPINION

JACOBSON, Judge.

The sole issue we address in this appeal is whether appellants presented sufficient evidence of a contractual relationship between themselves and appellees arising out of their mutual membership on a board of realtors that would entitle appellants to damages against appellees for breach of contract.

## FACTS

■ We review the facts in the light most favorable to sustaining the judgment. *Klensin v. City of Tucson,* 10 Ariz.App. 399, 401, 459 P.2d 316, 318 (1969).

At all relevant times, all of the parties were licensed real estate salespersons or brokers, and all were members of the Mesa–Chandler–Tempe Board of Realtors. In 1985, appellee David Lords solicited offers to purchase a certain parcel of real property from another real estate broker, appellant Sylvia Waters. Although Lords did not have a written listing agreement, he did have a verbal listing agreement from the owners.[1] Waters later obtained a written offer from Walter Bush to purchase the property. The offer contained Bush's name, address, and phone number, and provided for payment of a real estate commission in the amount of six percent, one-half of which was to be paid to appellants and one-half to appellees.

Waters gave the written offer to Lords, who submitted it to the owners. The owners then contacted Bush directly and negotiated a sale of the property to Bush on terms virtually identical to those contained in the original offer, except that the commission provision had been deleted.

No real estate commission was ever paid in connection with the sale of the property to Bush. Appellants brought this action against appellees, seeking to recover ap-

---

1. Pursuant to A.R.S. § 44–101(6), the trial court found that the verbal listing agreement was unenforceable.

proximately $66,000.00—the commission they would have received based on Bush's original offer to purchase the property. The case was tried to the court. After appellants rested their case, the trial court granted appellees' motion to dismiss. This appeal followed.[2]

### DISCUSSION

Appellants' primary contention on appeal is that the parties' mutual membership in the Mesa–Chandler–Tempe Board of Realtors (Board) gave rise to a contractual relationship that would entitle appellants to bring a claim for breach of contract. In support of this contention, appellants rely on *Savoca Masonry Co. v. Homes & Son Construction Co.,* 112 Ariz. 392, 542 P.2d 817 (1975), which involved an action by one masonry company against another for the latter's breach of contract established by the bylaws of the Arizona Masonry Association. The *Savoca* court stated:

> Unquestionably the bylaws of a voluntary, unincorporated association constitute a contract between the association and its members and the rights and duties of the members as between themselves and in their relation to the association in all matters affecting its internal government and the management of its affairs are measured by the terms of such bylaws.

*Id.* at 395, 542 P.2d at 820. *See also Rowland v. Union Hills Country Club,* 157 Ariz. 301, 304, 757 P.2d 105, 108 (App.1988) (articles of incorporation and bylaws of voluntary association constitute a contract between members and the organization, and among the members themselves); *Aspell v. American Contract Bridge League,* 122 Ariz. 399, 402, 595 P.2d 191, 193 (App. 1979).

In this case, however, neither the bylaws, constitution, nor any rules or regulations of the Board were submitted as evidence to the trial court.[3] Rather, appellants introduced only the National Association of Realtors' Code of Ethics and the Standards of Practice Relating to Articles of the Code of Ethics (Code of Ethics) as proof of the terms of the alleged contract. Consequently, we focus our inquiry on whether the terms of this document created a contractual relationship between the parties based on which appellants could maintain an action against appellees for their breach thereof.

■ For an enforceable contract to exist, there must be an offer, an acceptance, consideration, and sufficient specification of terms so that the obligations involved can be ascertained. *K–Line Builders, Inc. v. First Fed. Sav. & Loan Ass'n,* 139 Ariz. 209, 212, 677 P.2d 1317, 1320 (App.1983), citing *Savoca,* 112 Ariz. at 394, 542 P.2d at 819. The requirement of certainty is relevant to the ultimate element of contract formation, i.e., whether the parties manifested assent or intent to be bound. *Schade v. Diethrich,* 158 Ariz. 1, 9, 760 P.2d 1050, 1058 (1988). *See generally* 6 Am.Jur.2d *Associations and Clubs* § 20 (1963) (whether the bylaws or other rules of an organization form a contract between the members themselves depends on the intention of the parties).

A California court has held that the bylaws of a plumbing association did not constitute a contract between its members so that one member could maintain an action against another for failure to abide by the bylaws. *Scott v. Lee,* 208 Cal.App.2d 12, 24 Cal.Rptr. 824 (1962). The *Scott* court stated:

> It is doubtless true that parties may, as among themselves, assume a contractual obligation to comply with the bylaws and rules of a voluntary association. Whether the by-laws themselves constitute such an agreement turns on whether the elements of a contract are present.

---

**2.** The trial court also granted appellees' motion to dismiss the fraud count of appellants' complaint; appellants do not appeal from this ruling.

**3.** Although appellants cite in their brief to Lords' testimony regarding his agreement to be

bound by the bylaws of the Board and by the rules and regulations promulgated by it, none of these documents were submitted into evidence, and Lords did not read those bylaws into evidence at trial.

24 Cal.Rptr. at 826. Noting that mutual consent is an essential element of a contract, the court found that the bylaws on their face negated assent to contractual obligations:

It is much more closely related to a fraternal oath than to the business agreement. The pledge is "on my sacred word and honor", and "on my honor as a man", phrases which, cynically or not, have come to be construed as expressing "moral obligation" as distinguished from business agreement.

*Id.*

Similarly, in our opinion, the Code of Ethics of the Board was intended by the realtor members to constitute a noncontractual pledge of moral conduct rather than a contract that would give rise to enforceable rights between the members. The preamble to the Code of Ethics provides, in part:

Under all is the land. Upon its wise utilization and widely allocated ownership depend the survival and growth of free institutions and of our civilization....

The REALTOR, therefore, is zealous to maintain and improve the standards of his calling and shares with his fellow REALTORS a common responsibility for its integrity and honor. The term REALTOR has come to connote competency, fairness, and high integrity resulting from adherence to a lofty ideal of moral conduct in business relations.

The preamble further sets forth the "Golden Rule" as a guide in interpreting the obligations set forth therein: "Whatsoever ye would that men should do to you, do ye even so to them." In our opinion, these provisions clearly are evidence of the Board members' intent to impose a moral, not a contractual, obligation upon themselves with respect to their relations with the public and each other. *See generally Scott, supra.*

Moreover, in order to be binding, an agreement must be definite and certain so that the liability of the parties may be exactly fixed. *Pyeatte v. Pyeatte,* 135 Ariz. 346, 350–51, 661 P.2d 196, 200–01 (App.1982) (essential terms and requirements of agreement not sufficiently definite so that obligations of the parties could be determined). Not only are the obligations set forth in the Code of Ethics generally aspirational in nature, there simply are no terms providing for specific enforcement of any ethical violations by an individual member against another member, nor are there any terms relating to financial obligations assumed by the members.[4] We believe that the lack of specificity in the terms of the Code of Ethics is evidence of the parties' intent not to be contractually bound thereby.

We hold that the Code of Ethics did not constitute a contract between the parties that would enable appellants to bring an action for damages against appellees. Because the Code of Ethics was the only evidence presented to establish a contractual relationship between the parties, the trial court properly granted appellees' motion to dismiss.

### ATTORNEYS' FEES

Appellants also argue that the trial court abused its discretion in awarding appellees their attorneys' fees and costs pursuant to A.R.S. § 12–341.01. An award of attorneys' fees and costs under § 12–341.01 is left to the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *Wheel Estate Corp. v. Webb,* 139 Ariz. 506, 508, 679 P.2d 529, 531 (App.1983).

Initially, we note that appellants make an oblique argument that, because the trial court held that no contract existed between the parties, this was not a case

---

**4.** Article 14 of the Code of Ethics provides:

In the event of a controversy between REALTORS associated with different firms, arising out of their relationship as REALTORS, the REALTORS shall submit the dispute to arbitration in accordance with the regulations of their board or boards rather than litigate the matter.

The record does not reflect whether this matter was submitted to arbitration prior to commencement of this lawsuit.

**604**

"arising out of contract" under § 12–341.01. However, a prevailing party is entitled to its fees under § 12–341.01 when sued on a contract even if the judgment is based on the absence of any contract. *Lacer v. Navajo County*, 141 Ariz. 392, 394, 687 P.2d 400, 402 (App.1984).

◼ Appellants also argue that the award was erroneous because appellees did not establish a "just defense." Section 12–341.01(B) provides:

The award of reasonable attorney's fees awarded pursuant to subsection A should be made to mitigate the burden of the expense of litigation to establish a just claim or a just defense....

Appellants contend that, even if no contract existed between the parties, appellees violated not only the Code of Ethics but also certain Arizona statutes, and therefore appellees came to the court with "dirty hands." However, appellees clearly established a "just defense" to appellants' claim of breach of contract: the trial court found that no contractual obligations existed between appellants and appellees. The claim that Lords acted unethically was presented to the trial court, and we find it within the court's discretion to reject that claim.

CONCLUSION

The judgment of the trial court is affirmed. We grant appellees' request for attorneys' fees on appeal pursuant to A.R.S. 12–341.01, upon compliance with Rule 21(c), Arizona Rules of Civil Appellate Procedure.

EHRLICH and EUBANK, JJ., concur.