46 F.3d 1149
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
WOLLMAN ENGINEERING, INC., Plaintiff-Appellant,
v.
MACTRONIX, INC., a Delaware corporation, Defendant-Appellee.
 No. 93-16069.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 15, 1994.
Decided Jan. 10, 1995.
 
 Before: TANG, REINHARDT and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellant Wollmann Engineering, Inc. ("WEI") alleges that appellee Mactronix, Inc. ("Mactronix") breached an enforceable contract for the sale of WEI's assets and liabilities to Mactronix for $800,000.00. WEI filed in state court, but Mactronix removed the action to federal court pursuant to 28 U.S.C. Sec. 1332.[1] On April 1, 1993, Mactronix filed a motion for summary judgment that the district court granted. The court found that the parties did not intend to form a binding agreement because WEI's offer lacked reasonable certainty. WEI appeals the district court's grant of summary judgment for Mactronix. We have jurisdiction under 28 U.S.C. Sec. 1291, and we reverse and remand the case for further proceedings.
 
 I.
 
 3
 Summary judgment is reviewed de novo. Hanon v. Dataproducts Corp., 976 F.2d 497, 500 (9th Cir.1992). The court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Tzung v. State Farm Fire and Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989). A material fact "is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " Hanon, 976 F.2d at 500 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).
 
 
 4
 Under Arizona law, a contract exists if there is "a bargain, consisting of promises exchanged, and consideration." Schade v. Diethrich, 760 P.2d 1050, 1057 (Ariz.1988). Here, a reasonable jury could find that there was a bargained-for-exchange and consideration. On September 26, 1990, after a number of meetings and discussions, Andy Wollmann, President of WEI, faxed a letter to John Lau, President of Mactronix, in which he offered to sell "Wollmann Engineering Assets (and mentioned liabilities) to Mactronix Inc." for the sale price of "$800,000." Lau accepted the offer the next day by faxing a letter to WEI stating that "I am happy to accept and thank you for this offer." Thus, Mactronix promised to give WEI $800,000.00 in exchange for WEI's promise to sell its assets and liabilities to Mactronix. In addition, consideration exists because WEI is giving up its assets and Mactronix is giving up $800,000.00.
 
 
 5
 Arizona law further requires, however, that the contract be reasonably certain and definite. Id. at 1057-58. Appellee Mactronix alleges that WEI's offer was not reasonably certain because the offer lacked material terms and the terms it did contain were ambiguous. Mactronix notes that some of the terms the offer lacked were, inter alia, (1) a date for the closing of the sale and purchase, (2) the definition of "gross sales", (3) clauses regarding warranties, guarantees, and promises, (4) clauses regarding non-competition, and (5) clauses regarding consultation for Mactronix by Andy Wollmann. With respect to the actual terms of the offer, Mactronix argues that the "assets" and "liabilities" to be received by Mactronix were not in any way identified or defined.
 
 
 6
 An enforceable contract, however, need not contain all material terms. In the past, Arizona law rested on a "formalist" view in which a contract, to be enforceable, had to contain all material terms. Savoca Masonry Co., Inc. v. Homes & Son Const. Co., Inc., 542 P.2d 817 (Ariz.1975). This formalist approach "has long since given way to the 'realist' approach, exemplified by the Uniform Commercial Code and the Second Restatement of Contracts," in which courts will strive to uphold a contract, even though the contract may lack material terms.[2] AROK Construction Co. v. Indian Construction Servs., 848 P.2d 870, 874 (Ariz.App.1993); Schade, 760 P.2d at 1058. In AROK, the court upheld a construction contract even though the contract failed to specify several terms, such as manner and time of payment, penalty provisions, time for completion, and bonding. AROK, 848 P.2d at 875, 879. Thus, a contract that lacks material terms or has terms that are not reasonably certain may still be enforceable.
 
 
 7
 The crucial inquiry in cases in which certainty is at issue is whether the parties intended to be bound. The court in AROK noted, " '[T]he requirement of certainty is not so much a contractual validator as a factor relevant to determining the ultimate element of contract formation--the question whether the parties manifested assent or intent to be bound.' Thus, the overriding question is whether the parties intended to contract." Id. at 1058 (quoting Schade, 760 P.2d at 1058).
 
 
 8
 Here, in viewing the evidence in the light most favorable to WEI, a reasonable jury could find that Mactronix and WEI intended to form a binding contract. The September 26, 1990 offer from Andy Wollmann and the September 27, 1990 acceptance by Lau did not take place in a vacuum. Rather, Lau and Chuck DeGeest, Mactronix's sales manager, had visited WEI several times prior to September 26. WEI gave both of them a tour of the facility, allowed them to meet by themselves with the key employees of WEI, and provided them with WEI's financial condition, including WEI's assets and liabilities. Lau reviewed the inventory of WEI and, at a dinner with Andy Wollmann and George Wollmann, Vice President of WEI, Lau stated that he had the information he needed concerning the proposed sale.
 
 
 9
 Lau also sent a letter on August 30, 1990 in which he expressed the intent of Mactronix to pursue in good faith an agreement to purchase "all assets" of WEI. On September 25, 1990 Lau told Andy Wollmann to make Mactronix a take-it-or-leave-it final offer. Andy Wollmann faxed an offer on September 26 in which he offered to sell WEI's "Assets (and mentioned liabilities)" to Mactronix in exchange for $800,000.00. Lau accepted on September 27. In Lau's acceptance letter, Lau explicitly stated, "On behalf of Mactronix and its members both in Dallas and in Phoenix, I am happy to accept and thank you for this offer." Prior to this acceptance, Mactronix had no employees in Phoenix. On these facts, a reasonable jury could find that WEI and Mactronix intended to form a binding contract.
 
 
 10
 Mactronix alleges that the September 26 offer did not contain two crucial terms: a clause dealing with Andy Wollmann's consulting position and a non-compete clause. In George Wollmann's affidavit, however, he stated, "We decided that it would be easier to negotiate Andy's consulting and a non-compete [clause] with a separate agreement at a later date.... This would allow [Lau] the choice of whether or not to hire Andy without jeopardizing the sale."
 
 
 11
 The law does not demand that a contract for the sale of a business contain every single relevant term nor that the parties involved must stop negotiating once a binding contract is reached. As the AROK court noted, "parties may want to bind themselves and at the same time desire to leave some matters open for future resolution in order to maintain flexibility." 848 P.2d at 876.
 
 
 12
 Moreover, the actions of both WEI and Mactronix indicate that they viewed the September 26 offer and September 27 acceptance as a binding contract. In Schade, the court noted:
 
 
 13
 The fact that one or more terms of a proposed bargain are left open or uncertain may show that a manifestation of intention is not intended to be understood as an offer or as an acceptance.... But the actions of the parties may show conclusively that they have intended to conclude a binding agreement, even though one or more terms are missing or are left to be agreed upon. In such cases, courts endeavor, if possible, to attach a sufficiently definite meaning to the bargain.
 
 
 14
 760 P.2d at 1058 (quoting Restatement Sec. 33(3) and comment a (emphasis in opinion)). Here, Andy Wollmann, immediately after receiving Lau's fax, met with the employees of WEI and told them there had been a sale of the company. On Lau's end, after faxing the letter to Andy Wollmann, Lau called George Wollmann and told him he had agreed to purchase WEI. Shortly thereafter, Mactronix directed that a tool kit and some computers be taken from WEI and sent to Mactronix. It set salaries for existing employees of WEI. It directed that WEI's priority points for trade shows be assigned to Mactronix. It prepared business cards showing WEI as Mactronix's Southwest Center. Finally, it took over the negotiations with Chartered Semiconductor. Given the above facts, a reasonable jury could conclude that Mactronix's and WEI's actions show conclusively that they intended to conclude a binding agreement.
 
 
 15
 Even where there is a binding agreement, however, the lack of reasonable certainty will sometimes operate to make the agreement unenforceable because the courts cannot attach a sufficiently definite meaning to the bargain. Under Arizona law, the requirement of " 'reasonable certainty' is satisfied if the agreement that was made simply provides 'a basis for determining the existence of a breach and for giving an appropriate remedy.' " Schade, 760 P.2d at 1059 (quoting Restatement Sec. 33(2)); AROK, 848 P.2d at 875 (same).
 
 
 16
 Here, determining the existence of the breach is not difficult. The legal standard is whether " 'the essential terms are so uncertain that there is no basis for deciding whether the agreement has been kept or broken.' " AROK, 848 P.2d at 877 (quoting Restatement (Second) of Contracts Sec. 33 comment a). In AROK, the general contractor, ICS, refused to allow the subcontractor, AROK, to perform any work despite an agreement. Id. The court stated, "In this case, the refusal by ICS to honor the agreement is a total breach. If ICS made a binding promise to pay AROK for this work, there is sufficient basis for deciding whether a breach occurred even without 'gap-filling' by a court." Id. Similarly here, Mactronix refused to honor the September 26 offer that it accepted. Mactronix simply refuses to buy WEI's assets and liabilities. It was a total breach of the agreement. Mactronix did not, for instance, pay part of the money in exchange for part of WEI's assets and liabilities. Thus, the agreement provides a basis for determining the existence of Mactronix's breach.
 
 
 17
 The agreement also provides a basis for giving an appropriate remedy. In AROK, the agreement contained the scope of the work to be performed by the subcontractor and the price of the work. The court found this was sufficient to guide the court in providing a remedy. The court stated:
 
 
 18
 ICS was in total breach by refusing to allow AROK to perform the drywall and stucco work. The agreed price, together with other evidence such as the cost to AROK of performing the work, will enable the court to give an appropriate remedy.
 
 
 19
 848 P.2d at 877. Similarly here, there is an agreed price ($800,000.00) and what that price will yield to Mactronix: WEI's assets and liabilities. A reasonable jury could conclude that Mactronix intended to purchase all the assets and liabilities of WEI. Indeed, in Lau's August 30th letter, Lau stated that he was interested in an agreement for "all assets" of WEI. A reasonable jury could conclude that all assets (and liabilities) means all the assets (and liabilities) discussed in the afternoon meeting on August 25th and listed in the WEI financial statement given to Lau and DeGeest.[3] Moreover, the identity and quantity of a company's assets and liabilities are capable of determination. Thus, the agreement provides a basis for fashioning an appropriate remedy.
 
 
 20
 Mactronix cites Rogus v. Lords, 804 P.2d 133, 136 (Ariz.App.1991) for the proposition that "in order to be binding, an agreement must be definite and certain so that the liability of the parties may be exactly fixed." Rogus is inapposite, however, because it dealt with whether a board of realtor's Code of Ethics could create contractual liability. Id. Here, unlike an aspirational Code of Ethics, WEI's offer contains a concrete price term, and WEI's assets and liabilities are capable of determination. Moreover, AROK was decided after Rogus, and both AROK and Schade adopt Restatement Sec. 33(2) as the legal standard: " 'reasonable certainty' is satisfied if the agreement that was made simply provides 'a basis for determining the existence of a breach and for giving an appropriate remedy.' " Schade, 760 P.2d at 1059 (quoting Restatement Sec. 33(2)); AROK, 848 P.2d at 875 (same).
 
 
 21
 Summary judgment in this case is not appropriate. There are genuine issues of material fact regarding whether the parties intended to form a binding agreement and the terms of that agreement.
 
 
 22
 We REVERSE and REMAND for proceedings consistent with this memorandum disposition.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 WEI is an Arizona corporation and has its principal place of business in Arizona. Mactronix is a Delaware corporation and has its principal place of business in Texas
 
 
 [2]
 All of the principal cases that appellee Mactronix relies upon were decided prior to AROK (1993) and Schade (1988) and reflect the outdated formalist approach to contract interpretation. The only exception is Rogus v. Lords, 804 P.2d 133 (Ariz.App.1991), which is discussed infra. Even Rogus, however, was decided prior to AROK
 
 
 [3]
 Lau and DeGeest dispute receiving such a financial statement. But that is a question of credibility, and the jury should decide it. On summary judgment, we view all the evidence in the light most favorable to WEI. Here, WEI contends that they provided a fifty-two page financial statement to Lau and DeGeest