NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

_____

PHOENIX LAW ENFORCEMENT ASSOCIATION, et al.,
*Plaintiffs/Appellees,*

*v.*

CITY OF PHOENIX, *Defendant/Appellant.*

No. 1 CA-CV 19-0813
FILED 4-22-2021

_____

Appeal from the Superior Court in Maricopa County
No.  CV2014-008711, CV2014-009114, CV2015-007714
(Consolidated)
The Honorable Sherry K. Stephens, Judge

**AFFIRMED IN PART; VACATED IN PART**

_____

COUNSEL

Napier, Coury & Baillie, P.C., Phoenix
By Michael Napier, Eric Wilson, Cassidy Bacon
*Counsel for Plaintiffs/Appellees PLEA, Barry Jacobs, Earle Akre, Robert Ramsey, Rick Flum*

Yen Pilch & Landeen, P.C., Phoenix
By Caroline A. Pilch, Robert E. Yen, Michael Pang
*Counsel for Plaintiffs/Appellees Theresa Clark, et al.*

Sherman & Howard L.L.C., Phoenix
By John Alan Doran, Matthew A. Hesketh, Lindsay H.S. Hesketh
*Counsel for Defendant/Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge D. Steven Williams and Judge David D. Weinzweig joined.

---

**T H U M M A**, Judge:

¶1        The City of Phoenix challenges orders certifying as class actions claims asserted by plaintiffs Phoenix Law Enforcement Association (PLEA), et al., and plaintiffs Theresa Clark, et al. For the reasons below, the orders are affirmed as to certification of both the PLEA class and the Clark class under Arizona Rule of Civil Procedure 23(b)(2) (2021),[1] and of the PLEA class under Rule 23(b)(3), but the certifications of both classes under Rule 23(b)(1)(B) are vacated.

## FACTS AND PROCEDURAL HISTORY

¶2        City police officers are members of Arizona's Public Safety Personnel Retirement System (PSPRS). Under PSPRS, benefits are based on the employee's "average monthly benefit compensation." The "average monthly benefit compensation" is calculated using the monthly "base salary" paid over the consecutive three-year period that yields the highest average salary. Ariz. Rev. Stat. (A.R.S.) § 38-842(7)(a), (12).

¶3        City police officers who have not yet been promoted to the rank of sergeant are members of PLEA. Sergeants and lieutenants are members of the Phoenix Police Sergeants and Lieutenants Association (PPSLA). The City collectively bargains with PLEA and PPSLA about the terms of employment under Arizona's meet and confer ordinances. Phoenix City Code §§ 2-209 to -222; §§ 2-223 to -235. Under those ordinances, the City must meet every two years with PLEA and PPSLA to negotiate new terms of employment. If agreements are reached, they are

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

memorialized in collective bargaining agreements: a Memorandum of Understanding (MOU) for PLEA and a Memorandum of Agreement (MOA) for PPSLA (collectively, MOUs and MOAs are referred to here as Collective Bargaining Agreements, or CBAs). If, however, the parties cannot agree, the City Council or City Manager imposes terms of employment based on "the interest of the public employees, public employer, and the public." Phoenix City Code §§ 2-219(K)(3); -233(B).

¶4            Starting in 1988, the MOUs contained provisions that allowed employees to increase (sometimes called "spike") their pension benefits by converting vacation time, sick time and uniform allowances into additional base salary. An employee could elect to participate in any or all of these wage enhancement provisions by submitting an election form. If an employee made such an election, the increased base salary would be used to calculate retirement benefits under PSPRS, typically leading to a larger pension benefit. These provisions were renewed in each subsequent MOU starting in 1988. The MOAs had similar provisions starting in 1990.

¶5            In 2014, the City informed PLEA and PPSLA that, given fiscal issues, it would not agree to renew the wage enhancement provisions in the new CBAs. The parties did not reach new agreements and no MOU or MOA was signed. As a result, the City imposed terms of employment that did not include wage enhancement provisions for 2014–2016.

¶6            PLEA, representative members and several individuals (the PLEA plaintiffs) sued the City in June 2014 challenging the removal of the wage enhancement provisions and seeking declaratory and injunctive relief. In July 2014, PPSLA members, individually and as class representatives (the Clark plaintiffs), sued the City making similar claims and seeking similar relief. In 2015, the Clark plaintiffs filed a separate complaint adding claims for promissory estoppel and failure to pay wages. By mid-2016, all three cases were consolidated into this case.

¶7            In October 2018, the Clark plaintiffs moved for class certification. *See* Ariz. R. Civ. P. 23. As discussed below, the motion by the Clark plaintiffs sought class certification under Rule 23(b)(1)(B) and (2). In January 2019, the PLEA plaintiffs moved for class certification under Rule 23(b)(1)(B) and (3). The PLEA plaintiffs and the Clark plaintiffs each sought certification of three sub-classes: employees who elected to participate in the wage enhancement provisions before July 1, 2014 and who stopped receiving the additional salary, and two classes of employees who had not yet begun receiving the benefits.

¶8            The City opposed both motions. During the pendency of the motions, the City also moved for judgment on the pleadings. The court denied in part and granted in part the motion for judgment on the pleadings, barring any claim for relief "unless a plaintiff was approved and participating in the wage enhancement program on or before July 1, 2014."

¶9            After significant briefing and argument, the superior court granted the motions for class certification. The court found there are about 700 class members — nearly 500 in the PLEA Class and more than 200 in the Clark Class. The questions of law and fact common to the class members identified by the court "relate to whether there is a contract between [the City] and those participating in the wage enhancement program . . . and if [the City] must fulfill its obligations to the plaintiffs." The court found the claims by the class representatives are typical of claims by the class and the representatives are adequate. *See* Ariz. R. Civ. P. 23(a). The court found the PLEA Class met the requirements of Rule 23(b)(1)(B), (b)(2), and (b)(3), and the Clark Class met the requirements of Rule 23(b)(1)(B) and (b)(2).

¶10          Based on these findings, the court certified two classes: (1) a class of PLEA members, consisting of Phoenix Police Department Unit IV officers who, as of June 30, 2014, satisfied the requirements of, and elected to participate in, at least one wage enhancement provision (the PLEA Class); and (2) a class of PPLSA members, consisting of Phoenix Police Department sergeants and lieutenants who, as of June 30, 2014, satisfied the requirements of, and elected to participate in, at least one wage enhancement provision (the Clark Class). This court has jurisdiction over the City's timely appeal challenging the class certifications pursuant to A.R.S. § 12-1873(A). Ariz. R. Civ. P. 23(f); *Brumett v. MGA Home Healthcare, LLC*, 240 Ariz. 420, 432 ¶ 22 (App. 2016).

## DISCUSSION

¶11          Class actions are governed by Arizona Rule of Civil Procedure 23, which is nearly identical to its federal counterpart. The prerequisites for a class action are listed in Rule 23(a) while the types of permissible class actions are listed in Rule 23(b). "Plaintiffs seeking class certification must meet all the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)." *Ferrara v. 21st Century N. Am. Ins. Co.*, 245 Ariz. 377, 380 ¶ 6 (App. 2018). Given the similarity of the rules, cases construing Federal Rule of Civil Procedure 23 are instructive in construing Arizona's Rule 23. *Id.* at ¶ 6 n.2 (citation omitted).

**¶12**         "'The issue of whether a suit should be allowed to proceed as a class action is left to the trial court's discretion and, absent an abuse of discretion, we will not interfere with the decision of the trial court.'" *Id.* at ¶ 6 (quoting *Godbey v. Roosevelt Sch. Dist. No. 66*, 131 Ariz. 13, 16 (App. 1981)). As stated by the Ninth Circuit, "noticeably more deference" is given to the grant of class certification than to a denial. *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 956 (9th Cir. 2013). "Matters of statutory construction and interpretation are questions of law, which we review de novo. In general, the factual considerations inherent in the decision to grant or deny class certification are left to the trial judge's discretion and will not be set aside absent an abuse of that discretion." *Ariz. Dep't of Rev. v. Dougherty*, 200 Ariz. 515, 517 ¶ 7 (2001) (citation omitted).

**I.      The Record Provides a Proper Basis Supporting the Findings that the Rule 23(a) Prerequisites Were Met.**

**¶13**         Rule 23(a) prerequisites are: (1) numerosity; (2) commonality; (3) typicality and (4) representativeness. Ariz. R. Civ. P. 23(a). Although the City does not challenge numerosity, it challenges, in various ways, whether the court properly found the other prerequisites were met, including whether there is a genuine dispute about wage enhancement presenting a common question of law or fact. The court addresses those issues in turn.

**A.      The Court Properly Determined the Proposed Classes Met the Commonality Requirement.**

**¶14**         The "commonality" prerequisite "requires simply that there exist questions of law or fact common to the class." *Ferrara*, 245 Ariz. at 380 ¶ 10 (quoting *Lennon v. First Nat'l Bank of Ariz.*, 21 Ariz. App. 306, 309 (1974)). "What matters to class certification . . . [is] the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Ferrara*, 245 Ariz. at 381 ¶ 10 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

**1.      The Dispute Regarding Wage Enhancement Beyond the Expiration of the CBAs.**

**¶15**         Plaintiffs must affirmatively "prove that there are in fact . . . common questions of law or fact." *Dukes*, 564 U.S. at 350. In determining whether the Rule 23 requirements are met, the court may consider any "material sufficient to form a reasonable judgment on each [Rule 23(a)] requirement." *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1005 (9th Cir. 2018) (quoting *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975)).

¶16 The parties disagree about whether the wage enhancement provisions extended beyond the expiration of the CBAs. Plaintiffs allege they do because each provision states that an election would continue for three years with the option for another election after the initial three-year period. Whether the provisions extend beyond the expiration is therefore a question common to all proposed class members.

¶17 The City alleges that plaintiffs' theory "necessarily calls into question the personal intent of each Plaintiff and putative class member at the time of making an election." As a result, the City asserts plaintiffs failed to submit sufficient evidence of commonality; specifically, whether each plaintiff and putative class member reasonably intended and genuinely believed that wage enhancement would survive beyond the expiration of the 2012–2014 CBAs. But as discussed below, however, the intent of the putative class member does not defeat or negate this common question.

## 2. Contract Claims Based on the CBAs.

¶18 The City argues that plaintiffs' contract claims, based on removal of the wage enhancement provisions from the CBAs, are not common to the class. The City argues that whether there is a breach turns on whether each individual plaintiff (1) interpreted the provisions to convey a right that outlasted each CBA's duration, and (2) intended to accept a three-year offer of wage enhancement by submitting an election form. The City argues this inquiry for each plaintiff negates any commonality on the point.

¶19 A breach of contract claim requires a valid contract, its breach and resulting damages. *Thomas v. Montelucia Villas, LLC*, 232 Ariz. 92, 96 ¶ 16 (2013). A contract is not valid unless the parties "manifested assent or intent to be bound." *Rogus v. Lords*, 166 Ariz. 600, 602 (App. 1991) (citing authority). Mutual assent turns on objective evidence, not a party's subjective intent. *Muchesko v. Muchesko*, 191 Ariz. 265, 270 (App. 1997).

¶20 The court's ruling restricting class membership to only those employees who were participating in the wage enhancement provisions before July 1, 2014 negated potential commonality concerns. All class members were receiving the additional salary that was then removed. These class members assert a common breach of contract by alleging the same breach of the CBAs.

6

¶21　　　　The superior court found the questions of fact common to the classes "relate to whether there is a contract between [the City] and those participating in the wage enhancement program . . . and if [the City] must fulfill its obligations to the plaintiffs." The City made the same offer to each class member under the CBAs, and each class member accepted the offer in the same manner: by submitting an election form to convert benefits to additional salary. Submitting an election form is an objective manifestation of assent to participate in the wage enhancement provisions. Whether an employee subjectively believed the provisions would continue beyond the expiration of the CBAs does not affect whether he or she objectively manifested assent to the offer. *Muchesko*, 191 Ariz. at 270. The classes certified were limited to individuals who submitted election forms. Thus, the City has not shown the court erred in finding the contract claims based on the CBAs shared this common question.

¶22　　　　Turning to the election forms, breach of contract class actions are not appropriate where the claims require examination of personalized contract terms applicable to individual class members and the variations in contract terms are material to the issue of breach. *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 124 (2d Cir. 2013). Still, when the contracts "essentially all [say] the same thing," class certification may be appropriate. *Id.* Here, the City offered the same wage enhancement provisions to all employees under the applicable CBA. It did not make unique, personalized offers to each employee. Regardless of any differences between election forms (or, as noted above, employee intent), each employee's acceptance, manifested through the election form, bound the City to the same wage enhancement provisions of the CBAs. Thus, whether the City breached its contractual obligations to employees that submitted election forms is a common question.

### 3.　　Promissory Estoppel Claims.

¶23　　　　The City argues the superior court erred in failing to grant its motion for judgment on the pleadings to dismiss the plaintiffs' promissory estoppel claims. For their promissory estoppel claims, plaintiffs must prove: (1) the City made a promise; (2) it was reasonably foreseeable to the City that plaintiffs would rely on that promise; (3) plaintiffs justifiably relied on the promise and (4) plaintiffs incurred loss or suffered detriment as the result of such reliance. *See Contempo Const. Co. v. Mountain States Tel. & Tel. Co.*, 153 Ariz. 279, 282 (1987).

¶24 Procedurally, the City has not shown how this court, in addressing class certification, has appellate jurisdiction to review the denial of a motion for judgment on the pleadings. This court previously declined jurisdiction over the City's special action petition seeking to challenge that ruling. Similarly, there was no appealable partial final judgment entered as a result of the denial of the motion for judgment on the pleadings. *See* Ariz. R. Civ. P. 54(b).

¶25 Substantively, in seeking judgment on the pleadings, the City argued that *Johnson International, Inc. v. City of Phoenix*, 192 Ariz. 466 (App. 1998) barred promissory estoppel claims against the City. Along with finding the plaintiffs properly alleged the elements of promissory estoppel, the superior court found *Johnson* was distinguishable: "Unlike [*Johnson*], the MOA and MOU complied with the city charter and were approved as required." Thus, even if this court had appellate jurisdiction to review the ruling, the City has not shown the court erred in denying its motion for judgment on the pleadings.

¶26 The superior court held "[t]he basis for the promissory estoppel claim is found in documents which were common to all class members." The City made the same promise to each employee to enhance wages under the CBAs, it was reasonably foreseeable that plaintiffs would rely on that promise, plaintiffs relied by submitting election forms and have incurred a loss. Thus, the City has not shown the court erred in finding there are common questions of law or fact for the promissory estoppel claims.

### 4. Pension Clause and Contract Clause Claims.

¶27 Under the "Pension Clause" of Arizona's Constitution, "membership in a public retirement system is a contractual relationship that is subject to article II, section 25," and "[p]ublic retirement system benefits shall not be diminished or impaired." Ariz. Const. Art. 29, § 1(C). Article II, § 25, known as the Contract Clause, states: "No bill of attainder, ex-post-facto law, or law impairing the obligation of a contract, shall ever be enacted."

¶28 The City argues plaintiffs' claims under the Pension and Contract Clauses fail because their retirement benefits were not impaired. Under Arizona law, however, a public employee's pension benefits are vested upon employment. *Yeazell v. Copins*, 98 Ariz. 109, 114–15 (1965). "Once vested, those rights cannot be retroactively impaired by the public employer." *Godbey*, 131 Ariz. at 21 (citing *Yeazell*, 98 Ariz. 109; *City of Phx. v. Boerger*, 5 Ariz. App. 445 (1967).

8

¶29        The City argues these claims will "turn on a case-by-case inquiry into whether putative class members reasonably intended and genuinely believed that [wage enhancement] was a retirement benefit set forth in CBAs." But the issue is whether claims under the Pension and Contract Clauses satisfy the commonality requirement. Such claims turn on whether the Arizona Constitution's protections extend to the class members' rights, not on whether class members subjectively and genuinely believed they had those rights. Class members were employees participating in the wage enhancement provisions. Plaintiffs allege that, under *Yeazell*, the right to participate in the wage enhancement provisions vested at the time of employment. The wage enhancement provisions of the MOU were put in place starting in 1988, and in the MOA in 1990, with class members identified as participating members as of June 30, 2014. On this record, the City has not shown the court erred in certifying the class for plaintiffs' claims under the Pension and Contract Clauses.

### 5.        The Wage Claim by the Clark Class.

¶30        Only the Clark Class asserts a wage claim. "[I]f an employer . . . fails to pay wages due any employee, the employee may recover in a civil action against an employer or former employer an amount that is treble the amount of the unpaid wages." A.R.S. § 23-355(A). "Wages" means nondiscretionary compensation due to an employee in return for labor or services rendered by an employee for which the employee has a reasonable expectation to be paid. A.R.S. § 23-350(7). The City argues the wage claim fails because the Clark plaintiffs were fully paid for all work. At this stage of the case, however, the issue is whether this claim is common to all the Clark class members, not the merits of the claim. Given this common question, the City has not shown the court erred in finding the necessary commonality was present for the wage claim by the Clark Class.

### 6.        Individualized Affirmative Defenses Do Not Preclude a Finding of Commonality.

¶31        The City argues that its affirmative defenses apply in varying ways based on individual circumstances and cannot be decided on a class-wide basis, thus precluding a finding of commonality. *See In re Light Cigarettes Mktg. Sales Pracs. Litig.*, 271 F.R.D. 402, 421 (D. Me. 2010). It is true that individualized affirmative defenses may preclude class certification under Rule 23(b)(3) if the individual affirmative defenses predominate over the common questions of law or fact. Even then,

> When "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members."

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 7AA C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1778, pp. 123–24 (3d ed. 2005)) (footnotes omitted). Moreover, predominance under Rule 23(b)(3) and commonality under Rule 23(a) are different inquiries. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 830–32 & n.12 (1999). The City cites no authority, and this Court has found none, requiring commonality in affirmative defenses to all class members in addressing the Rule 23(a)(2) prerequisite of "questions of law or fact common to the class." Here, the court found that potential affirmative defenses do not defeat commonality under Rule 23(a)(2). The City has shown no error in that determination.

### 7. Calculation of Damages Was Bifurcated and Does Not Preclude a Finding of Commonality.

**¶32** The City argues the need to individually calculate damages precludes a finding of commonality. But the parties stipulated to bifurcate trial, first addressing liability and then damages. *See* Ariz. R. Civ. P. 42(b). Whether the method to calculate damages is common to the class is therefore not at issue here. The court also found plaintiffs had established a methodology to calculate or establish damages for the entire class. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 33–35 (2013). The City has not shown the court erred in finding the method of calculating damages was sufficient to permit commonality finding.

### B. The Class Representatives' Claims Are Typical of the Class.

**¶33** A class can be certified if the claims or defenses of the representative parties are typical of the claims or defenses of the class. Ariz. R. Civ. P. 23(a)(3). The City argues the class representatives' claims and circumstances are not typical when compared to those of the class members. The arguments provided by the City, however, largely repeat the commonality arguments rejected above, which fare no better in assessing typicality. The documents providing the basis for plaintiffs' claims are the same for the class representatives and class members, thereby meeting the

typicality threshold. And the prerequisite is that class representatives' claims "are typical of the claims . . . of the class," not that they are identical. Ariz. R. Civ. P. 23(a)(3).

**¶34** Although formulations of typicality differ, it can be characterized as addressing whether the interests of the representative are not antagonistic to those of the absent class members. *Godbey*, 131 Ariz. at 17 (citing *Thomas v. Clarke*, 54 F.R.D. 245 (D. Minn. 1971)). Here, the class representatives seek to recover the value of the wage enhancement provisions. The absent class members seek to do the same. Nor has the City shown the class representatives are "preoccupied with defenses unique to" them. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). On this record, the City has not shown the court erred in finding the representatives' claims are typical under Rule 23(a)(3).

### C.     Plaintiffs Are Adequate Representatives of the Class.

**¶35** The final prerequisite challenged by the City is finding that "the representative parties will fairly and adequately protect the interests of the class." Ariz. R. Civ. P. 23(a)(4). Adequacy implicates commonality and typicality, but "also factors in competency and conflicts of class counsel." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626, n.20 (1997) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157–58 n.13 (1982)).

**¶36** The City's arguments again largely repeat the commonality arguments rejected above and fail for similar reasons. The City argues there are potential "conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625–26. But the conflict cited is that, if the classes prevail, "[s]ome employees may not like" the possible remedy. Potential dissatisfaction with an outcome is not a conflict of interest addressed by Rule 23(a)(4).

**¶37** The superior court found that plaintiffs are adequate representatives because "[a]ll plaintiffs have suffered the same injuries by virtue of the alleged breach of contract and elimination of the wage enhancement program." The court also found counsel for plaintiffs are experienced in class action litigation and have special knowledge based on previously representing class members. On this record, the City has not shown the court erred in finding that the adequacy requirement was met.

## II.     Rule 23(b) — Types of Class Actions.

**¶38** A class can be certified when it meets all the requirements of Rule 23(a) and one of the requirements of Rule 23(b). *See Ferrara*, 245 Ariz.

at 380 ¶ 6. The superior court certified the PLEA Class under Rule 23(b)(1)(B), (b)(2) and (b)(3) and the Clark Class under Rule 23(b)(1)(B) and (b)(2). The City argues the classes could not be certified under any of these subparts of Rule 23(b).

### A. The Superior Court Did Not Err in Certifying the Classes Under Rule 23(b)(2).

**¶39** Under Rule 23(b)(2), a class action is authorized if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate for the class as a whole." Ariz. R. Civ. P. 23(b)(2). The declaratory and injunctive relief sought by the classes are paradigm class actions under Rule 23(b)(2).

**¶40** The City argues that Rule 23(b)(2) does not allow class certification for damages claims. That argument, however, does not address the declaratory and injunctive relief sought. The City also argues that "a single injunction or declaration is not feasible," because there "are too many material differences" among class members. But, again, a declaration of what the MOU and MOA required and prohibited, and any resulting injunctive relief, is the type of class action contemplated by Rule 23(b)(2).

**¶41** The City next argues that the "requests for class-wide declaratory and injunctive relief are moot." This argument stems from the thought that "[t]he only possible relief is fundamentally retrospective, directed toward compensating putative class members for alleged past harms, and the superior court erred by certifying a class to seek declaratory or injunctive relief." But litigation typically is retrospective, determining whether compensation is owed for alleged past conduct and resulting harm and, if so, determining the amount. A declaration of what the MOU and MOA and election forms require or prohibit is but one step in that litigation. Nor does the federal authority the City cites for this argument show plaintiffs' requested equitable relief is moot. *See Daskalea v. Wash. Humane Soc.*, 275 F.R.D. 346, 365–66 (D.D.C. 2011) (finding statutory amendments precluded declaratory relief for future conduct and finding class certification under Rule 23 (b)(1)(A), which is not at issue here, was "inappropriate"); *Vinole v. Countrywide Home Loans, Inc.*, 246 F.R.D. 637, 642 (S.D. Cal. 2007) (noting proposed class did not exclude individuals who admittedly did not have valid claims and, in denying Rule 23(b)(3) class certification, stating "if the Court were to certify this proposed class, it would allow putative class members who, by their own admission do not qualify for relief, to litigate inherently meritless claims through a

representative action. This the Court declines to do."). On this record, the City has not shown the court erred in certifying the classes under Rule 23(b)(2).

### B. The Superior Court Did Not Err in Certifying the PLEA Class Under Rule 23(b)(3).

¶42 A class action is appropriate if common questions of law or fact predominate "over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Ariz. R. Civ. P. 23(b)(3). Factors relevant to the inquiry include interests of the class members in controlling their individual claims; whether litigation addressing the issues has "already begun by or against class members;" the interests in resolving "the claims in the particular forum" and "likely difficulties in managing a class action." Ariz. R. Civ. P. 23(b)(3)(A)–(D). A class action is the superior method of adjudicating the action if it would save time, effort, expense, and promote the uniformity of decision for similarly situated individuals. *Amchem*, 521 U.S. at 615.

¶43 As noted above, affirmative defenses are relevant to the question of predominance for class certification purposes, and individual affirmative defenses may defeat predominance. *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1241 (11th Cir. 2016). The party raising the affirmative defenses must show that such affirmative defenses render the class unmanageable. *See Garza v. Gama*, 240 Ariz. 373, 375 (App. 2016).

¶44 Here, the superior court addressed each Rule 23(b)(3) factor in its decision. Although the City argues "countless individual issues predominate over any commonalities and class litigation is not superior," it has not shown the court erred in reaching a contrary conclusion. As to the City's affirmative defenses, the court did not find that potential affirmative defenses will require individual resolution or that those potential defenses prevent class certification. On this record, the City has not shown the court erred in finding the PLEA plaintiffs satisfied the requirements under Rule 23(b)(3) or erred in certifying the PLEA Class under Rule 23(b)(3).

### C. Class Certification Under Rule 23(b)(1)(B) Was Improper.

¶45 Under Rule 23(b)(1)(B), a class action is appropriate "if prosecuting separate actions" by individual class members "would create a risk of" adjudications "that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede the other members'

13

ability to protect their interests." Ariz. R. Civ. P. 23(b)(1)(B). The City first argues that the requested declaratory and injunctive relief would not dispose of other class members' interests, meaning Rule 23(b)(1)(B) does not apply. To the contrary, the arguments about requested declaratory and injunctive relief are obviated by the Rule 23(b)(2) analysis above.

¶46 The classic application of Rule 23(b)(1)(B), however, is a "limited fund" case in which "numerous persons make claims against a fund insufficient to satisfy all claims." *Amchem*, 521 U.S. at 614. Rule 23(b)(1)(B), along with Rule 23(c)(2) (notice and opt out provisions), "provides for certification of a class whose members have no right to withdraw, when 'the prosecution of separate actions . . . would create a risk' of 'adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.'" *Ortiz*, 527 U.S. at 833. The City is correct in arguing that this is not a limited fund case.

¶47 As noted by a widely followed class action treatise, Rule 23(b)(1)(B)

> does not refer specifically to limited fund cases but employs generic terms enabling certification where individual adjudication would dispose of or impair the rights of others. The framers of the Rule identified exemplary situations to which it is meant to apply, including non-limited fund circumstances, such as an action by policyholders against a fraternal benefit association attacking a financial reorganization of the society and an action by shareholders to compel the declaration of a dividend.

2 William B. Rubenstein, *Newberg on Class Actions* § 4:20 (5th ed. 2020) (citations omitted) (*Newberg*). It does not appear these other "exemplary situations" of when Rule 23(B)(1)(B) would apply have any application here. Simply put, this is not a case in which "the shared character of rights claimed or relief awarded entails that any individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members." *Ortiz*, 527 U.S. at 834.

¶48 On appeal, plaintiffs offer no persuasive rationale for certification under Rule 23(b)(1)(B). The Clark plaintiffs assert that the issue of whether the additional salary payments are pensionable compensation is a statutory question determined by the court. But they do not explain how the resolution of that question, which they claim has already been decided by the court, would support class certification under Rule 23(b)(1)(B). Nor have the Clark plaintiffs shown how the decision about their breach of contract claims, "as a practical matter," is "dispositive to the interests of the other members not parties to the adjudications." The PLEA plaintiffs assert that "[a]ny determination that the MOUs or the Election Forms were or were not breached is entirely dispositive of each class members['] claim." But that argument assumes a certified class, when the issue presented here is whether a class properly could be certified under Rule 23(b)(1)(B).

¶49 Even more significantly, plaintiffs offer no case law supporting their assertion that class certification of this or a similar issue would be proper under Rule 23(b)(1)(B). *Newberg* helps explain why Rule 23(b)(1)(B) is not applicable in this employment dispute:

> Employment-related class actions are rarely limited fund cases. Many discrimination cases seek injunctive, not monetary, relief and therefore fall outside the limited fund category. Other discrimination cases, as well as wage and hour cases, may seek monetary damages from an employer, but rarely do the employer's assets constitute a limited fund, particularly given the Supreme Court's definition of "limited fund" for certification purposes [quoted] above. Moreover, under the *Ortiz* requirements, the mere fact that one employee's claim may have precedential effects on similar future claims is insufficient to establish that the initial action is "dispositive of the interests" of possible future litigants.

7 *Newberg, supra*, § 23:28 ("Rule 23(b)(1)(B) employment class actions") (citations omitted). For these reasons, certifying the classes under Rule 23(b)(1)(B) was error and those portions of the court's orders are vacated.[2]

### III. The City Has Not Shown the Notice of Claim Issue Defeats Class Certification.

¶50 The PLEA plaintiffs filed their initial complaint against the City as a putative class action in June 2014. The Clark plaintiffs filed their initial complaint against the City as a putative class action in July 2014. The cases were consolidated later that month and the City filed answers in August and September 2014. Substantial motion practice, briefing and evidentiary hearings began almost immediately, including on plaintiffs' request for temporary restraining orders and preliminary injunctions.

¶51 Nearly three and a half years later, in October 2017, the City moved for judgment on the pleadings based on the PLEA plaintiffs' failure to serve a notice of claim. *See* A.R.S. § 12-821.01(A) (barring any claim not filed within one hundred eighty days after the cause of action accrues). The superior court denied the motion in February 2018, finding the City's conduct was a waiver and the City suffered no prejudice by the lack of notice of claim. In its later class certification orders, the court again stated that the City

> was aware of the scope of the litigation from the beginning. The Court's prior analysis regarding waiver still applies. Clark Plaintiff[s] filed a Notice of Claim in 2015. The complaint filed by the Clark Plaintiffs stated the action was brought on behalf of all similarly situated officers, sergeants, and lieutenants and thus there is similarly no prejudice to [the City] as to the Clark Plaintiffs' failure to file a formal Notice of Claim for a class.

---

[2] The Clark plaintiffs' motion for class certification did not seek certification under Rule 23(b)(3). Contrary to the Clark plaintiffs' assertion at oral argument on appeal, the superior court did not sua sponte certify the Clark class under Rule 23(b)(3). Indeed, the Clark plaintiffs have not shown how such a certification would be consistent with the City's right to advance notice and an opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Thus, this court rejects any suggestion that the court also certified the Clark Class under Rule 23(b)(3).

The City sought special action relief of that determination, and this court declined jurisdiction. The City now claims class certification was improper given its notice of claim defense.

**¶52**　　　　The City has not shown that compliance with the notice of claim statute defeats class certification here. The purpose of the notice of claim statute "is to provide the government entity with an opportunity to investigate the claim, assess its potential liability, reach a settlement prior to litigation, budget and plan." *Havasupai Tribe of Havasupai Rsrv. v. Ariz. Bd. of Regents*, 220 Ariz. 214, 223 (App. 2008). The City points to no prejudice or evidence showing the superior court erred in finding it was not prejudiced by the PLEA plaintiffs' failure to comply with the notice of claim statute. Moreover, the Arizona Supreme Court has observed that notice of claim requirements are subject to waiver. *See Pritchard v. State*, 163 Ariz. 427, 432 (1990). As the Arizona Supreme Court noted more recently, because the City could "entirely avoid" litigation on the merits by promptly invoking a notice of claim defense, "waiver of that defense should be found when the defendant 'has taken substantial action to litigate the merits of the claim that would not have been necessary had the entity promptly raised the defense.'" *City of Phx. v. Fields*, 219 Ariz. 568, 575 ¶ 30 (2009) (citation omitted). Given the substantial litigation over nearly three and a half years from the filing of the complaints (and the City's answers) to when the City filed the motion for judgment on the pleadings, the City has not shown how any issue with the notice of claim statute defeats class certification.

## IV.　　*American Federation* **and** *Piccioli* **Do Not Alter the Analysis.**

**¶53**　　　　While this appeal was pending, the Arizona Supreme Court issued two opinions addressing whether one-time payouts for benefits constituted salary to calculate pension benefits. *See Piccioli v. City of Phx.*, 249 Ariz. 113 (2020); *Am. Fed'n of State Cnty. & Mun. Emp. AFL-CIO Local 2384 v. City of Phx.*, 249 Ariz. 105 (2020). The City cites these cases for the proposition that historical promises and practices do not lead to a vested right to wage enhancement that was not in the pension plan. The issue in this appeal, however, is limited to whether the superior court properly certified the classes, whereas *Piccioli* and *American Federation* ruled on the merits of those claims. Plaintiffs' claims are therefore not barred by *Piccioli* or *American Federation*.

## V. The Superior Court Conducted a Rigorous, Meaningful Analysis of the Rule 23 Requirements.

¶54        The City asserts the superior court failed to undertake a "rigorous and meaningful" analysis of the Rule 23 requirements. *Dukes*, 564 U.S. at 350–51 (2011). "[T]o satisfy the rigor requirement, a district court must detail with specificity its reasons for certifying. It must explain and apply the substantive law governing the plaintiffs' claims to the relevant facts and defenses, articulating why the issues are fit for classwide resolution." *Chavez v. Plan Benefit Servs., Inc.*, 957 F.3d 542, 546 (5th Cir. 2020) (citation omitted); *see also Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012). The City asserts the court "did not meaningfully analyze whether Plaintiffs presented evidence to satisfy Rule 23 . . . . Instead, the court oversimplified the issues and analyzed the certification requirements in cursory terms without discussing the specific factual details and legal nuances of the claim." The record, however, is to the contrary.

¶55        In addressing class certification, the superior court considered hundreds of pages of briefs, filed over nearly a year, and heard oral argument twice. Ultimately, the court's rulings, spanning 30 pages, reflect significant analysis of the facts and issues involved and provide detailed legal analysis leading to the conclusions. The court delineated why the class should be certified, including the approximate size of the classes, the common questions of law and fact, and that "all plaintiffs have suffered the same injuries by virtue of the alleged breach of contract and elimination of the wage enhancement program." The court relied on evidence appropriately provided by the parties during the year-long briefing. On this record, it cannot be said that the court failed to conduct a rigorous and meaningful analysis of the Rule 23 requirements in certifying the classes. *Cf. Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (finding a certification order was "conclusory" when it merely reiterated Rule 23 requirements and where "the record simply does not reflect any basis for us to conclude that some key requirements of Rule 23 have been satisfied"); *Chavez*, 957 F.3d at 548 (vacating a class certification order when, among other things, the court "[did] not identify the common question with any specificity" and "analyze[d] it conclusionally"); *see also* 3 *Newberg*, *supra*, § 7:19 (citing cases).

## VI.    Attorneys' Fees and Costs on Appeal.

**¶56**        The City and the Clark plaintiffs request attorneys' fees and costs under A.R.S. §§ 12-341, -341.01, and -1840. In the court's discretion, the requests for fees are denied. The City, however, is awarded its taxable costs on appeal against both the PLEA plaintiffs and the Clark plaintiffs, contingent upon the City's compliance with ARCAP 21.

## CONCLUSION

**¶57**        The class certification orders are affirmed as to certification of both the PLEA Class and the Clark Class under Arizona Rule of Civil Procedure 23(b)(2) and of the PLEA Class under Rule 23(b)(3). The class certification orders under Rule 23(b)(1)(B) are vacated as to both classes.



AMY M. WOOD • Clerk of the Court
FILED:    AA